JOHN KNYBEL, ADMINISTRATOR (ESTATE OF EDWARD K. KNYBEL) *v.* ETHEL CRAMER.

MALTBIE, C. J., JENNINGS, ELLS, DICKENSON and INGLIS, Js.

Argued October 6—decided December 7, 1942.

*George H. Cohen,* with whom, on the brief, was *Naaman Cohen,* for the appellant (defendant).

*Robert J. Pigeon,* with whom was *Byron P. Yost,* for the appellee (plaintiff).

DICKENSON, J. The plaintiff brought this action to recover for the death of his intestate, a child of eleven years of age, who was burned to death in the cellar of a store owned and operated by the defendant, and from a judgment for the plaintiff the defendant has appealed. The complaint alleged three grounds of recovery, negligence based upon a violation of the statute providing that no minor under sixteen years of age should be employed or permitted to work in a mercantile establishment, negligence in failing to furnish him a safe place in which to work and nuisance. The trial court concluded that the plaintiff was entitled to recover on the first two grounds and also upon the ground of negligence in another respect. As its conclusions as to the plaintiff's right to recover upon the first ground were correct, it is not necessary to consider the others.

The facts relevant to this ground of recovery, with such corrections as we make in the finding, are as follows: The defendant Ethel Cramer owned and operated a woman's apparel store. Her husband, Paul Cramer, worked therein as her assistant. The plaintiff's intestate, Edward Knybel, was a bright strong boy eleven years of age. From time to time over a period of six to eight weeks immediately prior to March 11, 1938, he worked in the defendant's store running errands and doing odd jobs. When he was asked to work by Ethel Cramer, he was paid by her. When he was asked to work by Paul Cramer, he was paid by him. On occasion Ethel Cramer was present when he was asked to work by Paul Cramer. The main place of business in the store was on the ground floor. From this floor a stairway of about fourteen steps led down into a cellar. The cellar had a dirt floor and brick walls. At one end there was a doorway opening on an alleyway. This was fitted with a

wooden door reinforced with iron bars. The door opened in and was locked with a steel bar and padlock, the key to which was left in the padlock at all times. Twenty feet from the foot of the stairway was a furnace.

On March 11, 1938, a shipment of millinery and dresses arrived at the store in cartons, the hats in addition being wrapped in tissue paper. These articles were unpacked sometime between 11 a.m. and 1 p.m. on that day and the cartons, eight or ten of them varying in size from two to three feet by one foot, were thrown down the cellar stairs with the tissue paper and littered the cellar floor. In the afternoon the plaintiff's intestate came to the store to work and was directed by Paul Cramer to go to the cellar, make up boxes to be used for dresses and clean away the paper. At about 3:20 p.m. a fire of unknown origin started in inflammable tissue paper and cartons in the cellar. The boy was working in the cellar at the time and called for Mr. Cramer. On the first occasion Ethel Cramer heard him but did nothing. On the second she went to the rear of the store, looked down the stairs into the cellar and saw paper burning. She called her husband, who went down into the cellar. She later called the fire department and warned people in the dressing room on the main floor to get out. She knew of the presence of the cartons and tissue paper in the cellar.

When Paul Cramer ran down into the cellar, he saw the fire and said to the boy, "Let's get some cardboard and try to put it out." This the two did, but without success. Then Paul Cramer ran into the lavatory, took a washbasin filled with water and threw it on the fire. This was of no avail and he then went to the door at the rear end of the cellar, removed the iron bar and went out leaving the boy in the cellar. Once

outside Paul Cramer called for help which arrived in the form of a Mr. Weingartner. Cramer heard the boy screaming and told Mr. Weingartner the boy was in the cellar. Mr. Weingartner crawled on his hands and knees through the back entrance and found the boy's dead body north of the stairs. He had been burned to death. One wall of the store was burned and the ceiling was blistered by heat before the fire was extinguished.

General Statutes, Sup. 1937, § 791d, in force at the time of the occurrences in question, reads in part as follows: "(a) No minor under sixteen years of age shall be employed or permitted to work in any manufacturing, mechanical, mercantile or theatrical industry, restaurant or public dining room, or in any bowling alley, shoe-shining establishment or barber shop. (b) No minor under the age of eighteen years shall be employed or permitted to work in any occupation which has been or shall be pronounced hazardous to health by the state department of health or pronounced hazardous in other respects by the department of labor and factory inspection."

The assignments of error pursued in the brief which attack the judgment as far as it is based upon a violation of this statute are: (1) there was no employment in violation of the statute (involving a question of agency); (2) if there was such an employment it was not the proximate cause of the death of the plaintiff's intestate; (3) the plaintiff's intestate was guilty of contributory negligence.

The questions of employment, agency and contributory negligence are disposed of by the finding, which is supported in turn by the evidence. The boy worked in the defendant's store from time to time for a period of six to eight weeks and was paid sometimes by the defendant and sometimes by her husband. The situa-

tion was not one as in *Gibbs* v. *Downs,* 94 Conn. 487, 490, 109 Atl. 170, relied on by the defendant, where occasional services were rendered in expectation of recovering gratuities. See *Tilbert* v. *Eagle Lock Co.,* 116 Conn. 357, 363, 165 Atl. 205. Further, the statute does not stop with the word "employed," but prohibits the storekeeper from permitting the minor to work in his establishment. As to the question of contributory negligence, aside from the fact that this was an eleven-year-old boy and the question whether he used reasonable care was one for the trial court to decide, the boy was under the direction of the defendant's agent and followed his instructions in attempting to put out the fire with heavy cardboard.

The case turns on the question whether the employment was a proximate cause of the death. Where a statute is designed to protect persons against injury, one who has, as a result of its violation, suffered such an injury as the statute was intended to guard against has a good ground of recovery. *Longstean* v. *McCaffrey's Sons,* 95 Conn. 486, 493, 111 Atl. 788; *Gonchar* v. *Kelson,* 114 Conn. 262, 265, 158 Atl. 545. There are many decisions which hold that where a child is employed in violation of a statute and suffers an injury as a result of that violation the employer is liable. 5 Labatt, Master & Servant, § 1899 et seq.; 35 Am. Jur. 561, § 133. An examination of these cases discloses that in most of them the statutes involved forbade the employment of children under a certain age in certain employments declared to be or evidently deemed hazardous. The restriction of these statutes to such employments in itself indicates that one purpose underlying all statutes forbidding the employment of children of tender years is a recognized legislative purpose to protect them against the dangers of employment.

In *Berdos* v. *Tremont & Suffolk Mills*, 209 Mass. 489, 95 N. E. 876, the court had before it a statute which prohibited the employment of a child under the age of fourteen in any factory, workshop or mercantile establishment; it held that any person who suffered damage from a violation of the statute might have a right of recovery against the one who violated it; and it said (pp. 492, 493): "Although this statute has educational as well as economic aspects, and may have been enacted in part to supplement the general law as to compulsory school attendance, it is not directed exclusively against illiteracy. . . . It relates to a class who are least able to protect themselves by appreciating and avoiding danger, or to request instructions as to matters beyond their understanding, or to arrange by contract for their protection, or to resist any compulsion arising from their own necessities or other circumstances." It was held that it is not enough for a plaintiff to prove a violation of the statute concurrent with his injury but he must go further and show that a condition to which the statute directly relates had a causal connection with his injury and that the purpose of such a statute has to do with the protection of childhood, and, while this does not mean that a defendant who employs a child in violation of its terms is thereby conclusively rendered liable for every accident which occurs to him while in the service, if the violation by the defendant of its statutory duty directly contributed to the injury there is ground for recovery. It was found in that case (p. 499) that there was "sufficient evidence [to go to the jury] that the plaintiff's damage was due to the act of the defendant in putting a minor of tender years at work in a position of danger to him on account of his youth, which a more mature person might have avoided."

The provision in the statute before us no doubt was

designed in part to protect the health and morals of children under the age of sixteen years. Considered as a whole the fair inference of legislative intent is that for their own protection no children under sixteen years of age should be permitted to work at the occupations named and no minors over sixteen and under eighteen should be permitted to work in any occupations pronounced hazardous by the state departments designated. Complete protection from such occupations as the one in question was purported to be given by the statute to children under sixteen and discretionary protection to the older class. We do not need to consider how far in general such a violation is properly to be regarded as the proximate cause of injuries suffered in the course of the employment. In this case the plaintiff's intestate was engaged in sorting the boxes and papers in the cellar. The fire occurred and he was directed by the defendant's agent to help put it out. His employment did not cease when the fire started. Indeed one of the chief claims of the plaintiff is that at this time it was the duty of the defendant to call the boy away from his work and she failed to do so.

The injuries to the plaintiff's intestate from which he died were suffered as a direct result of doing something which the defendant's agent had directed him to do. In such a situation the trial court was amply justified in concluding that the violation of the statute was the cause of the death of the boy. Subject to the superior will of his employer, he undertook a task at his employer's direction which resulted in his death. See *Hankins* v. *Reimers,* 86 Neb. 307, 125 N. W. 516.

There is no error.

In this opinion the other judges concurred.