LINDA SLICER *v.* DAVID QUIGLEY, ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued January 9—decision released April 15, 1980

*Richard A. Bieder,* with whom, on the brief, was *Lucy V. Katz,* for the appellant (plaintiff).

*Andrew J. O'Keefe,* with whom, on the brief, was *Richard J. Kenny,* for the appellee (defendant Reynold Burger, Jr.).

LOISELLE, J. The plaintiff, Linda Slicer, brought this action against the defendants David Quigley, Dennis Quigley and Reynold Burger, Jr., seeking damages for personal injuries allegedly caused by the negligence of the defendants. The jury returned a verdict in favor of the plaintiff against the Quigleys, but a defendant's verdict in favor of Burger. The plaintiff appeals from the judgment rendered and assigns error in the court's charge in several respects.

The defendants David Quigley and Reynold Burger, Jr., were minors, nineteen and twenty years old,[1] when the following events took place. The two met at Burger's home on July 18, 1972, at approximately 5:30 p.m. The evidence was conflicting as to how much time was spent there but, admittedly, they left Burger's home together at about 7 p.m. with Quigley operating the motor vehicle. They stopped at a package store where Burger purchased two six-packs of beer and gave five or six cans to Quigley. Both drank the beer as they drove around. They stopped at a restaurant where Quigley consumed more beer, then resumed drinking beer and driving around until the accident happened at 9:30 p.m. Burger was in the motor vehicle as a passenger at all times, and the beer Quigley drank that night was purchased by Burger who gave it to Quigley. A police toxicologist's report showed Quigley's blood alcohol level at .13 percent which is prima facie evidence that Quigley was driving under the influ-

---

[1] At the time of the accident, General Statutes § 1-1d established the age of majority at twenty-one.

ence of intoxicating liquor. General Statutes § 14-227a (c) (3). The plaintiff, a passenger on the motorcycle with which Quigley's automobile collided, suffered severe injuries. A month later, as a result of the accident, her leg was amputated below the knee.

The plaintiff's first claim of error is that the court refused to charge in accordance with the complaint's allegation of negligence that Burger gave alcoholic beverages to the defendant David Quigley, when he knew Quigley had driven after drinking in the past and knew that Quigley was going to drive during and after drinking the beverages supplied. This allegation is one of common-law negligence. This court, on at least three occasions, has followed the common-law rule on the sale or furnishing of intoxicating liquor. *Nelson* v. *Steffens,* 170 Conn. 356, 365 A.2d 1174 (1976); *Moore* v. *Bunk,* 154 Conn. 644, 228 A.2d 510 (1967); *Nolan* v. *Morelli,* 154 Conn. 432, 226 A.2d 383 (1967). See also *Pierce* v. *Albanese,* 144 Conn. 241, 249, 129 A.2d 606 (1957), appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957); *London & Lancashire Indemnity Co.* v. *Duryea,* 143 Conn. 53, 59–60, 119 A.2d 325 (1955). "At common law it was the general rule that no tort cause of action lay against one who furnished, whether by sale or gift, intoxicating liquor to a person who thereby voluntarily became intoxicated and in consequence of his intoxication injured the person or property either of himself or of another. The reason generally given for the rule was that the proximate cause of the intoxication was not the furnishing of the liquor, but the consumption of it by the purchaser or donee. The rule was based on the obvious fact that one could not become intoxicated by reason of liquor furnished him if he did not

drink it." *Nolan* v. *Morelli,* supra, 436–37; see also 45 Am. Jur. 2d, Intoxicating Liquors §§ 553–55; 48 C.J.S., Intoxicating Liquors § 430; 75 A.L.R.2d 833. The court's instructions followed the common-law rule approved by this court in charging the jury on this specification of negligence.

The complaint also alleged that Burger was negligent in that "he gave and/or delivered to the defendant David Quigley, a minor, alcoholic beverages in violation of Connecticut General Statutes § 30-86."[2] The plaintiff assigns error to the court's refusal to charge as requested and in accordance with this allegation that a violation of the statute was negligence per se and that proximate cause was for the jury to determine. In *Moore* v. *Bunk,* supra, this very issue was decided contrary to the claim of the plaintiff, again, based on the common-law rule. David Quigley was nineteen years old at the time of the accident. Since he was more than sixteen years old, he may be presumed, if he consumes liquor, to have done so voluntarily. *Moore* v. *Bunk,* supra, 648. Since Quigley's consumption of beer is presumed to have been voluntary, under the common-law rule it is Quigley's consumption, not Burger's alleged violation of General Statutes § 30-86, which was the proximate cause of Quigley's intoxication and the injuries claimed to have resulted therefrom. Id., 649. The common-law rule as to proximate cause applies in any common-law action of negligence,

---

[2] "[General Statutes] Sec. 30-86. SALES TO MINORS, INTOXICATED PERSONS AND DRUNKARDS. Any permittee who, by himself, his servant or agent, sells or delivers alcoholic liquor to any minor, or to any intoxicated person, or to any habitual drunkard, knowing him to be such an habitual drunkard, and any person, except the parent or guardian of a minor, who delivers or gives any such liquors to such minor, except on the order of a practicing physician, shall be subject to the penalties of section 30-113."

even though that action includes one or more alleged statutory violations, such as a violation of General Statutes § 30-86, which prohibits the furnishing of intoxicating liquor to minors. Id., 647. The court followed the law as stated by this court in charging on this element of negligence.

The plaintiff argues against the common-law rule, recognized and followed by this court, claiming that it should be rejected by this court as it has been by a substantial number of other jurisdictions. The plaintiff cites a string of cases to support her argument.[3] In examining the cases cited by the plaintiff to support her claim that the common-law rule should be modified, it is interesting that the California Supreme Court in the leading case of *Vesely v. Sager,* 5 Cal. 3d 153, 157, 486 P.2d 151 (1971), concluded that where a plaintiff third party is injured, the furnishing or selling of liquor to the defendant tortfeasor may be the proximate cause of the injury, but that where the injured plaintiff is

---

[3] The plaintiff cites cases from other jurisdictions to show that "at least in some circumstances, the furnishing of alcoholic beverages to another can be actionable as the proximate cause of injury to a third person." Few such cases involve the liability of a person furnishing, not selling, intoxicating liquor to a minor who then, under the influence of intoxicating liquor, injures a third party. *Giardina* v. *Solomon,* 360 F. Sup. 262 (M.D. Pa. 1973) (applying Pennsylvania law); *King* v. *Ladyman,* 81 Cal. App. 3d 837, 146 Cal. Rptr. 782 (1978); *Bennett* v. *Letterly,* 74 Cal. App. 3d 901, 141 Cal. Rptr. 682 (1977); *Brockett* v. *Kitchen Boyd Motor Co.,* 24 Cal. App. 3d 87, 100 Cal. Rptr. 752 (1972); *Brattain* v. *Herron,* 159 Ind. App. 663, 309 N.E.2d 150 (1974); *Thaut* v. *Finley,* 50 Mich. App. 611, 213 N.W.2d 820 (1973); *Linn* v. *Rand,* 140 N.J. Super. 212, 356 A.2d 15 (1976); *Wiener* v. *Gamma Phi, ATO Frat.,* 258 Or. 632, 485 P.2d 18 (1971); *Hulse* v. *Driver,* 11 Wash. App. 509, 524 P.2d 255 (1974). These cases do not uniformly uphold such liability, particularly where the person furnishing the liquor is a minor and where he did nothing more than give it to the minor defendant whose acts were the direct cause of the injury. *Bennett* v. *Letterly,* supra; *Hulse* v. *Driver,* supra.

the intoxicated person, the drinking, and not the furnishing of liquor is the proximate cause. *Cooper* v. *National R. R. Passenger Corporation,* 45 Cal. App. 3d 389, 394, 119 Cal. Rptr. 541 (1975), citing *Nolan* v. *Morelli,* 154 Conn. 432, 226 A.2d 383 (1967). The plaintiff's argument was recently made in *Nelson* v. *Steffens,* supra, 360. There the court concluded that: "For over one hundred years, except for those years when the eighteenth amendment to the federal constitution was in effect, this state has determined by its adherence to the common-law rule, as modified by the dram shop act, that the reasoning by both the courts and the legislature was best suited and was in the best interests of the citizens of this state." Id., 360. It is also significant that since *Nelson* v. *Steffens,* supra, which was decided in 1976, the general assembly, which has enacted extensive legislation concerning alcoholic beverages, has seen fit not to expand liability any further than that allowed by the dram shop act; General Statutes § 30-102; which requires a sale.

The plaintiff further alleged negligence on the part of Burger in that "he knew or should have known that the conduct of David Quigley constituted a breach of duty to other persons like Linda [Slicer] Young, and gave substantial assistance or encouragement to David Quigley to so conduct himself." A request to charge on this allegation was submitted to the court, but the court refused to charge as requested. To the extent that a portion of this request was contrary to the well-established common-law rule discussed above, the court did not err by refusing to charge as requested. *State* v. *Holmquist,* 173 Conn. 140, 142, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977); *State* v. *Green,* 172 Conn. 22, 25, 372 A.2d

133 (1976). In addition to the facts previously stated concerning the alcoholic beverages, the plaintiff offered evidence to show that Burger's behavior just prior to the collision may have encouraged Quigley's tortious conduct. Quigley stopped at a traffic signal next to the motorcycle on which the plaintiff was a passenger. She saw both Burger and Quigley holding dark bottles. Quigley cut in front of the motorcycle and then jammed on his brakes. Quigley kept driving fast and then braking in front of the motorcycle. At the next traffic signal the motorcycle and Quigley again were side by side with Quigley and Burger in the right turn lane. The motorcycle driver made some remark to Quigley, then Burger said to Quigley, "Let's get that ———— motorcycle." Instead of turning right, Quigley immediately pulled to the left, into the same lane as the motorcycle, sped up and crashed into the motorcycle. There was also evidence that moments before the collision, Burger screamed to Quigley to watch out for the motorcycle.

In *Carney* v. *DeWees,* 136 Conn. 256, 70 A.2d 142 (1949), this court followed the principle expressed in Restatement, 4 Torts § 876 that "[f]or harm resulting to a third person from the tortious conduct of another, a person is liable if he . . . (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." The Restatement comment on this principle states "[i]f the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act." Id., comment on clause (b), cited in *Carney* v. *DeWees,* supra, 262.

The error claimed by the plaintiff is that the court's instructions restricted the jury's consideration of those events that occurred in the moments just prior to the collision, and did not include comment on the evidence which showed that Burger was drinking beer and driving with Quigley for two hours prior to the accident. Aside from the evidence commented upon by the court, which included what the plaintiff claimed Burger said and his comment just prior to the collision, there was no evidence other than Burger's purchase and furnishing of beer to Quigley and the fact that he rode with Quigley that evening which would show that Burger had given substantial assistance or encouragement to Quigley to drive while intoxicated. The only facts to which the plaintiff points to substantiate this allegation of negligence, other than the events commented on by the court, are that Burger and Quigley's other friends knew that Quigley, at times, drove after drinking; that Burger gave bottles of beer to Quigley at Burger's home; that they took more bottles of beer from Burger's home to the car when they left; that Quigley had never bought anything at a package store even though he had consumed alcoholic beverages in Connecticut before; that the cans of beer bought at the package store by Burger were bought by him rather than by Quigley because Burger was the older looking of the two; that the cans were given by Burger to Quigley and drunk by them; and that Burger said nothing to Quigley at any time during the evening to discourage Quigley's driving while drinking. Under the common-law rule, Burger's furnishing beer to Quigley in and of itself cannot be considered the proximate cause of Quigley's intoxication. The remaining facts do not show that Burger's conduct

constituted a "substantial factor in causing the resulting tort." Restatement, 4 Torts § 876, comment on clause (b). The court did not err in its charge on this allegation of negligence.

The plaintiff also alleged that Burger was negligent in that "he failed to discourage, protest and/or object to the manner in which the said David Quigley, a minor, was operating said vehicle." The court instructed the jury that this allegation was difficult to prove because it required proof of a negative. The court discussed the evidence regarding Burger's warnings to Quigley moments before the collision, then said "it would not appear that the plaintiff has sustained the burden of proving that particular allegation." The court continued its charge, however, by saying: "That is the testimony as I recall it. If your recollection is different from mine and you feel that there were facts that would sustain that allegation, then I will leave it to your determination. I don't recall any, but, again, it is a question of fact. It is up to you to recall the testimony." No exception to this portion of the charge appears in the briefs or in the transcript. There is no error in the court's charge on this allegation of negligence.

The final claim of error is that the court failed to instruct the jury on the credibility of the witnesses whose testimony was obtained by deposition. No useful purpose would be served by a detailed discussion of this claim. The charge on this issue was adequate.

There is no error.

In this opinion COTTER, C. J., and HEALEY, J., concurred.

BOGDANSKI, J. (dissenting). The trial court erred in refusing the plaintiff's request to submit the statutory and common-law specifications of negligence to the jury.

On July 18, 1972, two teenagers, Reynold Burger, Jr., and David Quigley, spent an evening drinking alcoholic beverages and driving around the town of South Windsor. Burger furnished the alcohol to Quigley throughout the evening in question. Both were minors, Quigley, nineteen years of age and Burger, twenty. Quigley, the driver, became intoxicated and, while so intoxicated, collided with a motorcycle on which the plaintiff Linda Slicer was a passenger. Linda Slicer's leg was amputated as a result of the accident.

Section 30-86 of the General Statutes provides, in part, that *"any* person, except the parent or guardian of a minor, who delivers or gives any such [intoxicating] liquors to such minor, . . . shall be subject to the penalties of section 30-113." (Emphasis added.) Section 30-113 provides for a $1000 fine or imprisonment for not more than one year or both.

When the legislature establishes a rule of conduct by statute and its purpose in so doing is to protect the public from injury, a violation of that statute constitutes negligence. *Gonchar* v. *Kelson,* 114 Conn. 262, 264, 158 A. 545 (1932); *Pietrycka* v. *Simolan,* 98 Conn. 490, 495, 120 A. 310 (1923); *Monroe* v. *Hartford Street Ry. Co.,* 76 Conn. 201, 208, 56 A. 498 (1903). Whether that negligence is the cause in fact of the injury is for the jury to determine. The causal relationship between the act

claimed to be negligent and the injury is one of fact. *Mahoney* v. *Beatman,* 110 Conn. 184, 147 A. 762 (1929).

The person injured, however, must be a member of the class for whose protection the statute was enacted. The consumption of alcoholic beverages is an activity which admittedly is dangerous to public health, safety and morals. *Bania* v. *New Hartford,* 138 Conn. 172, 177, 83 A.2d 165 (1951). One of the purposes of § 30-86 is to protect the public from the dangers posed by minors unable to control their behavior because of the consumption of alcohol. The multitude of automobiles on the public highways enhances the danger. *Pierce* v. *Albanese,* 144 Conn. 241, 248, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957).

In *Zerby* v. *Warren,* 297 Minn. 134, 210 N.W. 2d 58 (1973), the Minnesota Supreme Court held that the sale of glue to a minor in violation of a statute created absolute liability on the part of the retailer for the wrongful death of another minor where the death resulted from the intentional sniffing of the glue. The court in *Flandermeyer* v. *Cooper,* 85 Ohio St. 327, 98 N.E. 102 (1912), reached a similar result with regard to the sale of morphine. See also *Knybel* v. *Cramer,* 129 Conn. 439, 29 A.2d 576 (1942) (employer liable for death of minor employed in violation of statute); *Anderson* v. *Settergren,* 100 Minn. 294, 111 N.W. 279 (1907) (unlawful loan of a gun to a minor); *Sadler* v. *Draper,* 46 Tenn. App. 1, 326 S.W. 2d 148 (1959) (negligently entrusting a car to an habitual drunkard); *Kness* v. *Truck Trailer Equipment Co.,* 81 Wash. 2d 251, 501 P.2d 285 (1972) (employer liable for death of minor forced to work in violation of state labor laws).

The trial court also refused to instruct the jury that Burger could be held liable in common-law negligence for furnishing an alcoholic beverage to the operator of a motor vehicle, knowing the operator's propensity to drive while drinking. There was evidence before the jury that Burger knew that by furnishing liquor to Quigley while he drove, he was creating an unreasonable risk that Quigley would become intoxicated and cause an accident.

Negligence is the failure to conform one's conduct either to a standard prescribed by the legislature or to the common-law requirement to exercise reasonable care under the circumstances. *Guglielmo* v. *Klausner Supply Co.,* 158 Conn. 308, 318, 259 A.2d 608 (1969). If Burger was found to be negligent, either at common law or under the statute, and that negligence was found to be the proximate cause of the accident and the injuries that followed, he would be liable to the plaintiff. *Toomey* v. *Danaher,* 161 Conn. 204, 286 A.2d 293 (1971).

In refusing to submit the common-law specification of negligence to the jury, the court stated that as a matter of law the proximate cause of any intoxication and the resulting injuries was not the furnishing of the alcoholic beverage to the operator but his voluntary consumption of it. That that common-law rule was harsh even in the days when most people either walked or rode a horse was noted by this court in *Nolan* v. *Morelli,* 154 Conn. 432, 437, 226 A.2d 383 (1967) (*King, C. J.*). In today's automobile age, that common-law rule is not only harsh but most unrealistic.

In June, 1978, the Secretary of Health, Education, and Welfare filed the Third Special Report to the United States Congress on Alcohol and Health.

"Traffic accidents are the greatest cause of violent death in the United States, and approximately one-third of the ensuing injuries and one-half of the fatalities are alcohol related. In 1975, as many as 22,926 traffic deaths involved alcohol. Experimental studies have demonstrated that alcohol causes degeneration of driving skills and impairment of judgment. However, the full extent to which alcohol use results in traffic accidents due to these impairments is unknown.

"General research trends seem to support the following facts concerning the relationships of alcohol and traffic crashes: (1) As many as 25 percent of drivers in nonfatal crashes and 59 percent of drivers in fatal crashes had blood alcohol concentrations (BAC's) of 0.10 percent or higher. (2) Up to 29 percent of passengers in fatal accidents showed BAC levels in the legally impaired range. (3) Alcohol could be involved in up to 83 percent of pedestrian fatalities. (4) As many as 72 percent of drivers in single-vehicle fatalities and 51 percent of drivers in multivehicle fatalities had BAC's of 0.10 percent or higher. (5) Of the drivers in multivehicle fatal crashes with BAC's in the high range, 44 percent were judged by researchers to be responsible for the crashes, compared to 12 percent judged not responsible.

"Data on alcohol involvement in crashes based on police reports indicate that the proportion of drivers who were drinking at the time of a crash increases in relation to the severity of the crash. . . .

"In general, the relative probabilities of crash involvement and causation increased dramatically as the driver's BAC increases." Third Special Report, supra, p. 61.

An even more recent official confirmation of the severity of alcohol related traffic accidents appeared on February 21, 1979. The Comptroller General of the United States in his report to the Congress, entitled "The Drinking-Driver Problem — What Can Be Done About It?" (hereinafter GAO Report), further documents the continuing tragic cost of drinking and driving.

The report begins: "Government at all levels, private organizations, and concerned citizen groups are spending millions of dollars on various drinking-driver programs, yet statistics continue to indicate that, overall, one-half of highway fatalities in the United States are related to alcohol." GAO Report, p. i. The Government Accounting Office found that among the major obstacles to successful anti-drinking-driver efforts were: "Social acceptability and use of alcohol. . . . *Need for increased judicial support.* . . . Need for effective methods to identify and penalize those who serve intoxicated individuals." (Emphasis added.) GAO Report, p. iv. The report continues, "According to the National Safety Council, the Department of Transportation, and other sources, alcohol-related accidents now account for as much as one-half of all highway deaths—or about 25,000 persons annually—and represent an estimated annual economic cost of over $5 billion. The Department of Health, Education, and Welfare reports that the total annual economic cost from alcohol abuse is about $42 billion." GAO Report, pp. 1–2.

Furthermore, F.B.I. statistics show that "more than 17,000 young people under 18, including 51 children aged 10 or younger, were arrested for

driving under the influence in 1975. The increase over 1970 is estimated at about 160 per cent." U.S. News and World Report, July 11, 1977, p. 33.

It is clear that the furnishing of an alcoholic beverage to an intoxicated person may be the proximate cause of injuries inflicted by that individual upon a third person. If such furnishing is a proximate cause, it is so because the consumption, resulting intoxication, and injury-producing conduct are foreseeable intervening causes, or at least the injury-producing conduct is one of the hazards which make such furnishing negligent.

It seems self-evident that the serving of alcoholic beverages to an obviously intoxicated person by one who knows that such intoxicated person intends to drive a motor vehicle creates a reasonably foreseeable risk of injury to those on the highway. Simply put, one who serves alcoholic beverages under such circumstances fails to exercise reasonable care.

With alcohol related accidents occurring daily the court should have determined that Burger could reasonably have foreseen the consequences of furnishing alcohol to Quigley, and that the furnishing of the alcohol to him could have been a substantial factor in causing the accident and the resulting injuries. To be sure, the act of Quigley in consuming the alcohol can certainly be considered a contributing factor, but whether it is such an intervening cause as would break the chain of foreseeable consequences emanating from Burger's negligent act is a question of fact for the jury.

To be such an intervening cause, however, the drinking by the operator must be voluntary. Under the common law, the voluntariness of the consump-

tion of alcohol was often presumed. At trial, however, a plaintiff may be able to show that such consumption was involuntary. Voluntariness implies intent. Once a person is intoxicated, however, the question then becomes whether such a person is capable of forming an intent to consume more alcohol. Many jurisdictions hold that he is not. The test of voluntary intoxication is whether there was an exercise of independent judgment and volition on the part of the person taking the intoxicant.

In *Merhi* v. *Becker*, 164 Conn. 516, 325 A.2d 270 (1973), this court sustained liability against a defendant union for injuries caused by the intoxicated operator of a motor vehicle. Becker attended a union sponsored picnic where he was furnished large amounts of alcoholic beverages. Becker became intoxicated, got into a fight with another picnicker, and drove his car into a group of picnickers striking and injuring Merhi. We there held that Becker's intoxication and assault with his automobile did not preclude a finding that the union's negligence was the proximate cause of Merhi's injuries, stating that even though Becker's act constituted an intervening force, it did not, in itself, relieve the defendant union of liability, for the harm caused the plaintiff. *Merhi* v. *Becker*, supra, 522.

Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct. Restatement (Second), 2 Torts § 442B, quoted with

approval in *Miranti* v. *Brookside Shopping Center, Inc.,* 159 Conn. 24, 28, 266 A.2d 370 (1969). The test to be applied is whether the defendant's conduct was a substantial factor in causing the plaintiff's injuries. *Ferndale Dairy, Inc.* v. *Geiger,* 167 Conn. 533, 538, 356 A.2d 91 (1975). The proximate cause need not be the sole cause. *Carney* v. *DeWees,* 136 Conn. 256, 264, 70 A.2d 142 (1949); *Miranti* v. *Brookside Shopping Center, Inc.,* supra, 29.

In upholding the court's charge, Connecticut will stand virtually alone in refusing to consider that the furnishing of alcoholic beverages in violation of a statute is the basis of a negligence action and in its unquestioning acceptance of the old common-law rule that the person who furnishes alcoholic beverages to another can never be held liable for a third person's injuries that were caused by the intoxicated person. Most state and federal courts which have considered these issues since 1971 have rejected or modified the immunity of a furnisher of alcoholic beverages from liability, holding that the furnishing of alcoholic beverages may be the proximate cause of injuries sustained by third parties. Alaska: *Vance* v. *United States,* 355 F. Sup. 756 (D. Alas. 1973) (commercial vendor); Arizona: *Thompson* v. *Bryson,* 19 Ariz. App. 134, 505 P.2d 572 (1973) (commercial vendor); California: *Coulter* v. *Superior Court,* 21 Cal. 3d 144, 577 P.2d 669 (1978) (social host);[1] *Vesely* v. *Sager,* 5 Cal. 3d 153, 486 P.2d 151 (1971) (commercial vendor); Delaware: *Taylor* v. *Ruiz,* 394 A.2d 765 (Del. Super.

[1] In response to the decision in *Coulter* v. *Superior Court,* 21 Cal. 3d 144, 577 P.2d 669 (1978), the California legislature passed a statute which absolves the server of alcoholic beverages, commercial or social, from any civil liability to third persons no matter how dangerous or obvious the condition of the consumer of the alcohol.

1978) (commercial vendor); District of Columbia: *Marusa* v. *District of Columbia,* 484 F.2d 828 (D.C. Cir. 1973) (commercial vendor); Florida: *Prevatt* v. *McClennan,* 201 So. 2d 780 (Fla. App. 1967) (commercial vendor); *Davis* v. *Shiappacossee,* 155 So. 2d 365 (Fla. 1963) (commercial vendor); Illinois: *Colligan* v. *Cousar,* 38 Ill. App. 2d 392, 187 N.E.2d 292 (1963); Indiana: *Brattain* v. *Herron,* 159 Ind. App. 663, 309 N.E.2d 150 (1974) (social host); Iowa: *Williams* v. *Klemesrud,* 197 N.W.2d 614 (Iowa, 1972) (social host); Kentucky: *Pike* v. *George,* 434 S.W.2d 626 (Ky. Ct. of App. 1968) (commercial vendor); Louisiana: *Pence* v. *Ketchum,* 326 So. 2d 831 (La. 1976); Massachusetts: *Adamian* v. *Three Sons, Inc.,* 353 Mass. 498, 233 N.E.2d 18 (1968) (commercial vendor); Michigan: *Grasser* v. *Fleming,* 74 Mich. App. 338, 253 N.W.2d 757 (1977) (commercial vendor); Minnesota: *Trail* v. *Christian,* 298 Minn. 101, 213 N.W.2d 618 (1973) (commercial vendor); Mississippi: *Munford, Inc.* v. *Peterson,* 368 So. 2d 213 (Miss. 1979) (commercial vendor); Montana: *Deeds* v. *United States,* 306 F. Sup. 348 (D. Mont. 1969) (commercial vendor); New Hampshire: *Ramsey* v. *Anctil,* 106 N.H. 375, 211 A.2d 900 (1965); New Jersey: *Rappaport* v. *Nichols,* 31 N.J. 188, 156 A.2d 1 (1959) (commercial vendor); *Galvin* v. *Jennings,* 289 F.2d 15 (3d Cir. 1961) (commercial vendor); New York: *Berkeley* v. *Park,* 47 Misc. 2d 381, 262 N.Y.S.2d 290 (1965); Ohio: *Taggart* v. *Bitzenhofer,* 35 Ohio App. 2d 23, 299 N.E.2d 901 (1972) (commercial vendor); Oregon: *Campbell* v. *Carpenter,* 279 Or. 237, 566 P.2d

See 1978 Cal. Stats., c. 929 amending Bus. & Prof. Code § 25602, and 1978 Cal. Stats., amending Civ. Code § 1714. The legislature has also expressly acknowledged that "the consumption of alcoholic beverages is the proximate cause of injuries inflicted upon another by an intoxicated person." Civ. Code § 1714 (b).

893 (1977); Pennsylvania: *Giardina* v. *Solomon,* 360 F. Sup. 262 (M.D. Pa. 1973) (social host); Tennessee: *Mitchell* v. *Ketner,* 54 Tenn. App. 656, 393 S.W.2d 755 (1964) (commercial vendor); Washington: *Callan* v. *O'Neil,* 20 Wash. App. 32, 578 P.2d 890 (1978) (commercial vendor).

The majority suggests that if the common law is to be changed, it should be done by legislation rather than judicial opinion. In a field long left to the common law, change may well come about by the same medium of development. *Diaz* v. *Eli Lilly & Co.,* 364 Mass. 153, 158, 302 N.E.2d 555 (1973); *Millington* v. *Southeastern Elevator Co.,* 22 N.Y.2d 498, 508, 239 N.E.2d 897 (1968). It is no impermissible slight to the rule of precedent to remember that, as with decisional law generally, what is judge-made can be and, in appropriate cases, should be judge-unmade. Stare decisis is a malleable rule, not one bound by bands of steel. As Roscoe Pound put it, "the law would break if it could not bend."

Both duty and proximate causation are issues of law to be decided by the court and not by the trier of facts. Prosser, Torts (4th Ed. 1971), pp. 206, 244–45. *Vance* v. *United States,* supra, 761. Proximate causation, however, is a matter of public policy and is therefore subject to the changing attitudes and needs of society. *Vance* v. *United States,* supra, 761. See Prosser, op. cit., 244–45. The law of torts is concerned with the allocation of losses arising out of human activities. Its purpose is to adjust these losses, affording compensation for injuries sustained by one person as a result of the conduct of another. Prosser, op. cit., 6. The development of the law of torts has been and is now peculiarly a function of the common-law judge. "When most

people walked and few had horses or carriages, or even in the days when the horse and buggy was a customary mode of travel, it may have been that the common law rule of non-liability arising from the sale of liquor to an intoxicated person was satisfactory. But the situation then and the problem in today's society of the imbiber going upon the public highways and operating a machine that requires quick response of mind and muscle and capable of producing mass death and destruction are vastly different." *Meade* v. *Freeman,* 93 Idaho 389, 400, 462 P.2d 54 (1969) (dissenting opinion).

Sensible reform can here be achieved without the articulation of detail or the creation of administrative mechanisms that customarily comes about by legislative enactment. Indeed, the legislature may rationally prefer to act, if it acts at all, after, rather than before, the common law has fulfilled itself in this way. See Friedmann, "Legal Philosophy and Judicial Lawmaking," 61 Colum. L. Rev. 821, 838 (1961).

The days when substantial justice must be sacrificed for the sake of blind adherence to strict technicalities long since outmoded have passed in this state. As Justice Frankfurter remarked in *Henslee* v. *Union Planters National Bank & Trust Co.,* 335 U.S. 595, 600, 69 S. Ct. 290, 93 L. Ed. 259 (1949), "[w]isdom too often never comes, and so one ought not to reject it merely because it comes late."

The dissenting opinion of Mr. Chief Justice Hallows in *Garcia* v. *Hargrove,* 46 Wis. 2d 724, 737, 176 N.W.2d 566 (1970), merits reflection: "The time has arrived when this court should again exercise its inherent power as the guardian of the common

law and hold upon general principles of common-law negligence a person, who, when he knows or should have known a person is intoxicated, sells or gives intoxicating liquor to such a person, is guilty of a negligent act; and if such negligence is a substantial factor in causing harm to a third person, he should be liable with the drunken person under our comparative-negligence doctrine. Conceded, the common law in this state for almost one hundred years has been to the contrary, [citations omitted], but the basis upon which these cases were decided is sadly eroded by the shift from commingling alcohol and horses to commingling alcohol and horse-power." The main characteristic of the common law is its dynamism. It does not remain static. The common law is not a thing of chiseled marble to be left unchanged for centuries. "Inherent in the common law is a dynamic principle which allows it to grow and to tailor itself to meet changing needs within the doctrine of *stare decisis,* which, if correctly understood, was not static and did not forever prevent the courts from reversing themselves or from applying principles of common law to new situations as the need arose. If this were not so, we must succumb to a rule that a judge should let others 'long dead and unaware of the problems of the age in which he lives, do his thinking for him.' Mr. Justice Douglas, Stare Decisis, 49 Columbia Law Review (1949), 735, 736." (footnote omitted). *Bielski* v. *Schulze,* 16 Wis. 2d 1, 11, 114 N.W.2d 105 (1962).

PETERS, J. (dissenting). I do not agree with the holding of the majority that the trial court correctly refused to charge that Reynold Burger was negligent in providing beer to David Quigley, a minor,

in violation of General Statutes § 30-86.[1]  Despite *Moore* v. *Bunk,* 154 Conn. 644, 647–49, 228 A.2d 510 (1967), I would limit the common-law rule of proximate cause stated in *Nolan* v. *Morelli,* 154 Conn. 432, 436, 226 A.2d 383 (1967), to cases alleging common-law negligence.  I do not believe that the policy represented by legislative enactment of § 30-86 is likely to be vindicated in fact by the authority to impose criminal penalties pursuant to § 30-113.[2]

---

[1] Section 30-86 provides, in relevant part:  "SALES TO MINORS, INTOXICATED PERSONS AND DRUNKARDS. . . . [A]ny person, except the parent or guardian of a minor, who delivers or gives any such [alcoholic] liquors to such minor, except on the order of a practicing physician, shall be subject to the penalties of section 30-113."

[2] Section 30-113 provides:  "PENALTIES. Any person convicted of a violation of any provision of this chapter, for which a specified penalty is not imposed, shall, for each offense, be fined not more than one thousand dollars or imprisoned not more than one year or both."