# FRANK OAKES *v.* NEW ENGLAND DAIRIES, INC.
## (14179)

PETERS, C. J., SHEA, CALLAHAN, GLASS and BORDEN, Js.

1

Argued February 21—decision released May 28, 1991

*Clifford J. Grandjean,* for the appellant (defendant).

*Anne Goldstein,* with whom was *Jonathan L. Gould,* for the appellee (plaintiff).

GLASS, J. The plaintiff, Frank Oakes, commenced this action in the Superior Court alleging that the defendant, his former employer, New England Dairies, Inc., had discharged him for exercising his workers' compensation rights in violation of General Statutes § 31-290a.[1]

---

[1] General Statutes § 31-290a provides in pertinent part: "(a) No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter.

"(b) Any employee who is so discharged or discriminated against may either: (1) Bring a civil action in the superior court for the judicial district where the employer has its principal office for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if he had not been discrimi-

After the jury returned a verdict awarding the plaintiff $67,500 in economic damages and $97,500 in noneconomic damages, the defendant moved for a new trial, to set aside the verdict, for judgment notwithstanding the verdict and for a remittitur. The trial court denied the motions and rendered judgment on the verdict for the plaintiff. In addition, the court awarded the plaintiff $40,000 in attorney's fees and granted his motion for reinstatement to his former position. The defendant appealed to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023.

On appeal, the defendant claims that the trial court improperly: (1) instructed the jury as to the plaintiff's burden of proof under § 31-290a as well as the measure of the plaintiff's damages for lost wages; (2) instructed the jury respecting the plaintiff's burden of proving damages for emotional distress; (3) refused to set aside the verdict or order a remittitur because the verdict was contrary to the law and the evidence; and (4) ordered the plaintiff reinstated to his former position without inquiring into whether such relief was appropriate.[2] We affirm.

nated against or discharged and any other damages caused by such discrimination or discharge. The court may also award punitive damages. Any employee who prevails in such a civil action shall be awarded reasonable attorney's fees and costs to be taxed by the court . . . ."

[2] The defendant also asserts that the court improperly awarded the plaintiff $40,000 in attorney's fees. Since the defendant indicates in its brief that it challenges the award of fees "only to the extent" that it is based on the verdict claimed excessive, and we conclude that the verdict was not excessive, we have no occasion to consider this claim.

As for the defendant's contention that the court improperly denied his motions for a new trial, to set aside the verdict, for judgment notwithstanding the verdict and for a remittitur, its brief addresses only the denial of the latter three motions insofar as the court failed to find the verdict excessive in light of the evidence. We consider the alleged excessiveness of the verdict and the evidence in support thereof in connection with the defendant's third issue on appeal and deem abandoned any unbriefed claims with respect to the court's rulings.

The jury could reasonably have found that for approximately eleven years prior to May 10, 1985, the plaintiff had been employed by the defendant as a route truck driver. His primary task was to deliver milk products to the defendant's customers along a designated route. In 1978, the plaintiff injured his knee when he slipped in snow while unloading his truck. From 1980 to 1985, the plaintiff suffered several additional injuries in the course of this employment for which he missed approximately thirty-eight weeks of work and collected workers' compensation benefits. The plaintiff's concern with "losing time" prompted him some months before his discharge to approach Russell Roly, the defendant's vice president of distribution, with a request for a "job inside." Roly informed the plaintiff that a position in the defendant's shipping department might be available, but both Roly and the plaintiff agreed that such a position would be more difficult for the plaintiff.

On May 6, 1985, following a ten week absence caused by one of his injuries, the plaintiff was summoned to a meeting in Roly's office. Roly handed the plaintiff a memorandum entitled "Excessive Personal Injuries" that described each of the plaintiff's injuries and listed the corresponding number of weeks of workers' compensation benefits collected by him.[3] The plaintiff was

---

[3] The April 2, 1985 memorandum stated in pertinent part: "A review of your accidents indicate to me that you are not a safe worker, that you take no precautions in these situations to protect yourself or the Company's interest. You have indicated that you have a problem with your knees, perhaps this is a contributing factor to your accident history.

"[The defendant's] position in this matter due to the high exposure with our insurance carrier in the past and . . . potential claims in the future would be: (A) Receive your written resignation effective immediately; (B) Discharge from New England Dairies, Inc. employment immediately and forfeiture of all vacation and sick leave benefits. Under Article XIII, Physical Qualification of Employees. It is unfortunate that we are left with these alternatives."

informed that the defendant's workers' compensation carrier had been "putting pressure" on the defendant because of the number of injuries he had suffered, and he was given a choice between resignation and discharge. After consulting an attorney, the plaintiff informed Roly on May 10, 1985, that he had decided not to resign. Roly handed the plaintiff a second memorandum stating in part that it was "the opinion of [the defendant] that your chronic knee condition has rendered you unable to perform your duties assigned to you."[4] The plaintiff was then formally discharged. Accordingly, the plaintiff's medical, dental and life insurance coverage, as well as his vested pension rights, were terminated.

After his discharge, the plaintiff felt "desolate." He testified regarding his emotional state as follows: "I just didn't know what I was going to do because the only thing I knew how to do was drive; and I was forty-eight years old, and I was worried about when I go look for a job, not only my age, they're going to say, 'You worked eleven years at a place. Why did you leave?'

[4] The May 10, 1985 memorandum stated in relevant part: "In accordance with Article XIII of the Labor Agreement all employees must be physically qualified to perform the duties required of them. It is the opinion of [the defendant] that your chronic knee condition has rendered you unable to perform your duties assigned to you. Under Article XIII, you must be qualified to perform as a route driver and that hazards encountered each day such as ice, snow, climbing up and down on your truck and making deliveries to customers, all have led to a series of personal accidents with extended lost time.

"The first conclusion is that you have made little effort to protect yourself or the Company's interest. But on the other hand, as you stated in our discussion that the normal hazards can cause your knee to fail and allow you to fall or slip. A review of your accidents indicates your chronic knee condition which you have indicated to me, is the contributing factor. It is apparent that under Article XIII that you are not physically qualified to perform your duties and the general work environment of lifting, climbing up and down, etc., offers no other suitable employment due to your knee problem . . . ."

And, 'I was fired.' . . . I was depressed, I was sick over it." The plaintiff's depression manifested itself in stomach pains and he "passed out" on two occasions. The plaintiff's physician prescribed valium for his depression, and he took nonprescription medication for his stomach pains, which continued up to and including the date of trial.

The plaintiff's discharge also led to a search for alternative employment that he described as a "nightmare." The plaintiff's applications for employment at forty-four places of business were rejected before he finally secured a position in September, 1985, at the Douglas Battery Manufacturing Company. After almost two years in that position, the plaintiff was intermittently unemployed or employed at various other places of business. In all of his postdischarge positions, the plaintiff earned less money than he would have earned if he had continued to work for the defendant. He never obtained a position that included pension benefits, and some of his positions did not include medical or life insurance coverage. The plaintiff was unemployed at the time of trial. In the plaintiff's view, "people wouldn't hire [him]" due to his "age" and "the reason [he had] lost" his position with the defendant.

## I

The defendant initially claims that the court improperly failed to instruct the jury on the plaintiff's burden of proof in a § 31-290a[5] action and the calculation of the plaintiff's damages for lost wages. The plaintiff responds that these claims are unpreserved, and hence unreviewable, because the defendant either did not request the particular instructions alleged to have been improperly omitted or did not take exception to the charge as given. Agreeing with the plaintiff, we do not reach the merits of the defendant's claims.

[5] See footnote 1, supra.

This court is not bound to consider claims challenging the failure to give an instruction "unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered." Practice Book § 315. An exception to a charge serves to alert the court to any claimed deficiency in the charge while there is still time for the court to take appropriate remedial action. See *Atlantic Richfield Co.* v. *Canaan Oil Co.*, 202 Conn. 234, 237–38, 520 A.2d 1008 (1987). " 'The time has long since passed when a party can sit silent at the close of a charge and, if the verdict proves unpalatable, thereafter for the first time raise claims of error based on obvious inadvertencies in the charge.' " *Scott* v. *Barrett,* 212 Conn. 217, 222–23, 561 A.2d 941 (1989). Furthermore, a party may not secure a reversal on the basis of an alleged instructional defect induced by his own actions. Id., 222; see *Thompson* v. *Thompson,* 183 Conn. 96, 99, 438 A.2d 839 (1981).

The defendant contends that the court improperly failed to instruct the jury that it was the plaintiff's ultimate burden in a § 31-290a action to prove that he "was the victim of discrimination 'either directly by persuading [the jury] that a discriminatory reason more likely motivated the [defendant] or indirectly by showing that the [defendant's] proffered explanation is unworthy of credence.' " *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.,* 216 Conn. 40, 54, 578 A.2d 1054 (1990). The defendant's request to charge with respect to the burden of proof, however, allocated to itself the burden of proving "that it terminated the plaintiff for reasons other than his filing a workers' compensation claim" and "that the reason was more than a pretext . . . ." In accordance with the defendant's request, the court allocated this burden to the defendant in its

instructions,[6] and the defendant did not object or take an exception. Even if we were to assume that the court's instruction were incorrect, therefore, the defendant, having induced the court to give the instruction, cannot obtain a reversal on the ground that it was given in lieu of an instruction allocating the burden of proof to the plaintiff.

As for the defendant's claim that the court improperly omitted an instruction that, in calculating the plaintiff's lost wages, the jury should consider what portion of the loss was caused by his physical problems and employment preferences subsequent to his discharge, the defendant did not request such an instruction, and, again, the defendant did not take exception to the charge as given. The defendant's posttrial motions, moreover, were not, as claimed, the functional equivalent to an exception to the charge. See *State* v. *Dabkowski,* 199 Conn. 193, 198, 506 A.2d 118 (1986). Since the motions were filed subsequent to the verdict, they did not provide the court with a timely opportunity to remedy any omission determined improper. See *Scott* v. *Barrett,* supra, 222–23. At this late date, we, therefore, are not bound to consider the propriety of the omission. Practice Book § 315.

Finally, we reject the defendant's contention that either of the above claims are reviewable as plain error under Practice Book § 4185.[7] We are not persuaded

---

[6] The defendant's request to charge reads in pertinent part: "To prevail, New England Dairies would have to satisfy you that it terminated the plaintiff for reasons other than his filing a workers' compensation claim. Though it would have to show that the reason was more than a pretext, it would not have to establish that the grounds for the plaintiff's termination amounted to 'just cause' under the Collective Bargaining Agreement."

Mirroring the language of this request, the court charged the jury that "to prevail New England Dairies would have to satisfy you that it terminated the plaintiff for reasons other than this exercise of rights under the Workers' Compensation Act."

[7] Practice Book § 4185 states: "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose sub-

that the interests of justice require a review of the defendant's claim regarding the omission induced; see *Scott* v. *Barrett,* supra; nor do we find, after a careful review of the record, that the omission with respect to the calculation of the plaintiff's lost wages impaired the effectiveness or integrity of the trial. See *State* v. *Foreshaw,* 214 Conn. 540, 547, 572 A.2d 1006 (1990). Consequently, we decline to review the defendant's claims on their merits.

## II

The defendant next challenges another omission in the court's instructions to the jury. The defendant's claim, as refined at oral argument, is that the court improperly failed to instruct the jury that the plaintiff was not entitled to recover damages for emotional distress unless he proved the defendant's common law liability for the tort of intentional infliction of emotional distress. To the extent that the defendant requested such an instruction, it was properly refused.[8]

---

sequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court.

"In jury trials, where there is a motion, argument, or offer of proof or evidence in absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, and counsel has fully complied with the requirements for preserving any objections or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same."

[8] The defendant's request to charge reads, in pertinent part: "In order to recover from [sic] emotional distress, you must find that the defendant should have realized that its conduct involves an unreasonable risk of causing emotional distress and that, this distress if it were a cause might result in an illness or bodily harm." Citing *Murray* v. *Bridgeport Hospital,* 40 Conn. Sup. 56, 62, 480 A.2d 610 (1984), the defendant now claims that the court should have instructed the jury that the plaintiff could not recover damages for emotional distress unless he proved: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that

The plaintiff's action against the defendant was premised upon the defendant's violation of § 31-290a, a statutorily created tort action derived from the common law action for wrongful discharge. *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.,* supra, 52. Section 31-290a (b) permits a plaintiff who establishes his or her employer's liability under the statute to recover "other damages," including damages for emotional distress, that are "caused by such discrimination or discharge." See id., 62. Unlike the defendant, we do not construe the statutory term "caused" to encumber a plaintiff seeking damages for emotional distress as recompense for his or her employer's violation of § 31-290a with the additional burden to prove the employer's liability for the distinct tort of intentional infliction of emotional distress. We conclude, rather, that the term "caused" in § 31-290a embodies the common law principle that "damages recoverable in tort must be *proximately caused* by a defendant's tortious conduct"; (emphasis added) *Solomon* v. *Aberman,* 196 Conn. 359, 385, 493 A.2d 193 (1985); "whether or not the consequences were reasonably anticipated." *Neiditz* v. *Morton S. Fine & Associates, Inc.,* 199 Conn. 683, 689 n.3, 508 A.2d 438 (1986); see 1 Restatement (Second), Torts § 47, comment (b). In a § 31-290a action, the employer's tortious conduct is that which is proscribed by the statute. The court's refusal to deliver a legally incorrect instruction to the jury does not constitute a ground for reversal. See *Slicer* v. *Quigley,* 180 Conn. 252, 258, 429 A.2d 855 (1980).

## III

The defendant next claims that the court should have set aside the verdict or ordered a remittitur because

emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress, and (4) that the emotional distress sustained by the plaintiff was severe."

the verdict of $67,500 in economic damages and $97,500 in noneconomic damages was contrary to the law and the evidence. We consider the economic and noneconomic components of the verdict separately below.

## A

The defendant argues that the portion of the $67,500 economic damage award representing the plaintiff's lost wages was inflated due to improper calculation. In particular, the defendant asserts that certain evidence demonstrated the plaintiff's physical inability to perform the duties of a route truck driver at the time of his discharge and thereafter. The defendant thus maintains that the jury improperly determined the plaintiff's lost wages by comparing the wages earned by a route truck driver during the period of discharge with the wages actually earned by the plaintiff during that period. In the defendant's view, the wage loss differential should have been narrowed to account for the plaintiff's physical incapacity. We are unpersuaded.

In evaluating the defendant's claim, we find the court's jury charge regarding the calculation of economic damages instructive. The court admonished the jury that if it were to award the plaintiff damages for lost wages, the award should reflect "the difference of what he would have been able to earn since he was discharged . . . and what he would have earned if he continued to work for the defendant." The court then referred to exhibits in evidence indicating that the driver who had replaced the plaintiff had earned $122,411.42 from the date of the plaintiff's discharge, and that the plaintiff had earned $55,393.12 from that date. The difference between these figures, as the court pointed out, was $67,018.30. Other economic losses were identified by the court as totaling $506.24, and

it was suggested that the jury might round off its economic damage award, if any, to $67,500. The defendant did not object or take exception to this charge. As noted above, the jury returned a verdict awarding the plaintiff economic damages in the amount of $67,500.

"By failing to take an exception to the court's charge to the jury, the [defendant] accepted the instructions as the law of the case." *A-G Foods, Inc.* v. *Pepperidge Farms, Inc.*, 216 Conn. 200, 212, 579 A.2d 69 (1990). "It necessarily follows that a verdict rendered in accordance with the unexcepted-to charge of the court is not a verdict contrary to the law." *Lengel* v. *New Haven Gas Light Co.*, 142 Conn. 70, 77, 111 A.2d 547 (1955). " 'The jury were bound to follow the court's instructions and to bring in a verdict for the plaintiff consistent with them, or a verdict for the defendants.' *Rosenblatt* v. *Berman*, 143 Conn. 31, 37, 119 A.2d 118 (1955). We must view the claim of insufficiency of the evidence in light of the law of the case." *A-G Foods, Inc.* v. *Pepperidge Farms, Inc.*, supra.

The jury's economic damage award was entirely consistent with the court's unchallenged instructions. Furthermore, the defendant has not identified any evidence that it introduced in contradiction to the exhibits indicating the wages of the replacement driver and the plaintiff that the court referred to in its charge. Construing the evidence in the light most favorable to sustaining the verdict; *Bartholomew* v. *Schweizer*, 217 Conn. 671, 687, 587 A.2d 1014 (1991); the jury could reasonably have found that the plaintiff was entitled to the amount of economic damages awarded. We therefore conclude that the verdict with respect to economic damages was not contrary to the law or the evidence. Accordingly, the court properly declined to set aside the verdict or to order a remittitur on this ground.

## B

With respect to the verdict of $97,500 in noneconomic damages, the defendant's principal challenge is based on the plaintiff's failure to introduce "expert medical testimony" or "medical or psychiatric care bills" to substantiate his claim of emotional distress. The defendant also argues that the "size" and the "characterization" of the award, that is, "pain-and-suffering," suggest that the jury "may not have limited the award solely to the emotional distress arguably attributable to retaliation for filing a workers' compensation claim." We do not agree.

While it is true that the jury foreperson labeled the noneconomic component of the damage award "pain-and-suffering," we do not consider this circumstance to make it manifest that the jury included in the award "items of damage which are contrary to law." *Tomczuk* v. *Alvarez,* 184 Conn. 182, 188, 439 A.2d 935 (1981). The court unambiguously instructed the jury that the "only" noneconomic item of damage awardable was "damages for mental suffering and emotional distress." Other than this item and the economic items of damage identified in the charge, the court cautioned: "You are not to concern yourselves with any other subject matter as far as damages are concerned." We presume that, as instructed, the jury limited its consideration of noneconomic damages to the emotional distress alleged by the plaintiff, and we are unpersuaded that what appears to be the foreperson's accidental mislabeling of the award amounts to "a fair indication to the contrary . . . ." *State* v. *Ortiz,* 217 Conn. 648, 669, 588 A.2d 127 (1991).

As for the plaintiff's evidence in support of his claim for damages for emotional distress, the court was

obliged, when ruling on the defendant's motions to set aside the verdict and for a remittitur, to view the evidence in the light most favorable to the plaintiff in determining whether the verdict returned was reasonably supported thereby. *Bartholomew* v. *Schweizer,* supra. " 'The size of the verdict alone does not determine whether it is excessive. "The only practical test to apply to this verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption." ' " Id. Every reasonable presumption in favor of the correctness of the court's refusal to set aside the verdict as excessive should be indulged; *Todd* v. *Glines,* 217 Conn. 1, 5, 583 A.2d 1044 (1991); and its ruling will not be disturbed unless there is a clear abuse of discretion. *Bartholomew* v. *Schweizer,* supra. We perceive no such abuse here.

We have already set forth the facts, viewed in the light most favorable to sustaining the verdict, that the jury could reasonably have found. In sum, we repeat here that from the plaintiff's testimony, the jury could have determined that he had suffered significant emotional distress and feelings of desperation as a result of his discharge, his concomitant loss of benefits and the termination of his vested pension rights. The plaintiff's precarious mental condition, necessitating prescription medication, also manifested itself in physical illness and discomfort. His futile four year search for employment as beneficial and financially secure as his former position was accompanied by numerous humiliating rejections which caused recurring physical problems and led to further emotional distress. We have previously rejected the proposition that proof of the existence of emotional distress requires expert testimony; see

*Aspiazu* v. *Orgera,* 205 Conn. 623, 631, 535 A.2d 338 (1987); see also *LaBieniec* v. *Baker,* 11 Conn. App. 199, 204, 526 A.2d 1341 (1987). Similarly, an award may be valid even though it is not substantially based on incurred medical expenses. See *Manning* v. *Michael,* 188 Conn. 607, 616, 452 A.2d 1157 (1982). "The test is whether the amount awarded, aside from medical expenses, ' "falls within the necessarily uncertain limits of just damages . . . ." ' " Id.

Given the plaintiff's age, the emotional and physical effects of his discharge and his endurance of a prolonged period of uncertainty as to his future financial security, we cannot say that the verdict, while generous, failed to meet that test. Like the trial court, we conclude that the award was not so large as to shock this court's sense of justice or to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption. *Bartholomew* v. *Schweizer,* supra, 688–89.

## IV

Finally, the defendant claims that the trial court improperly granted the plaintiff's motion for reinstatement to his former position pursuant to § 31-290a (b)[9] without first inquiring into whether such relief was appropriate. In support of this claim, the defendant directs our attention to a number of federal cases holding that reinstatement is inappropriate if the position sought no longer exists, an innocent incumbent would be displaced or excessive friction between employee and employer would result. The defendant further relies on federal precedent to the effect that where reinstatement is inappropriate, a court may award damages in lieu thereof.[10]

---

[9] See footnote 1, supra.

[10] For these propositions, the defendant cites the following cases. *Cassino* v. *Reichold Chemicals, Inc.,* 817 F.2d 1338 (9th Cir. 1987), cert. denied,

The defendant cannot prevail on this claim because it has not fulfilled its duty to provide an adequate record for appellate review. See Practice Book § 4061. Specifically, the defendant has not provided us with the transcript of the hearing on the plaintiff's motion, and, therefore, we are unable to determine whether or to what extent the court inquired into the appropriateness of reinstatement. In the absence of any indication in the record that the court did not so inquire, the defendant's claim necessarily fails.

The judgment is affirmed.

In this opinion the other justices concurred.

484 U.S. 1047, 108 S. Ct. 785, 98 L. Ed. 2d 870 (1988); *Briseno* v. *Central Technical Community College Area,* 739 F.2d 344 (8th Cir. 1984); *Cancellier* v. *Federated Department Stores,* 672 F.2d 1312 (9th Cir.), cert. denied, 459 U.S. 859, 103 S. Ct. 131, 74 L. Ed. 2d 113 (1982); *Kiel* v. *Goodyear Tire & Rubber Co.,* 575 F. Sup. 847 (N.D. Ohio 1983), aff'd, 762 F.2d 1008 (6th Cir. 1985); *Bitsouni* v. *Sheraton Hartford Corporation,* 37 Fed. R. Serv. 2d 1248 (D. Conn. 1983).