[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff brings this action under C.G.S. § 31-290a
for damages resulting from emotional distress.
Facts
The plaintiff employee of the defendant injured his neck at work on Friday, April 21, 1989. He told a supervisor about the incident and saw the nurse for treatment Plaintiff claimed that he experienced a significant amount of neck pain over the weekend and on Monday, April 24, 1989, he told Joseph Santaniello (Santaniello), a supervisor, of his injury and requested a form for making a formal report.
From April 24, 1989 to May 15, 1989, Mr. Anderson sought and received heat treatments, twice daily, from the department nurse It was during this period that Anderson felt that his supervisors were watching him closely and he CT Page 7379 said he was made to feel uncomfortable when asking for permission to see the nurse Margaret Caye (Caye) and upon returning from treatment.
Caye, during the period she treated Mr. Anderson received many telephone calls both before and after administering treatments to plaintiff. She also noticed, on several occasions, people from Mr. Anderson's unit standing in the hall outside her office while the plaintiff received treatment. She said that she had treated many employees before that time and that she had never seen such extensive scrutiny of an employee by his supervisors.
Joseph Santaniello came to her office on May 9, 1989, the day that Anderson filed his written notice of injury, and inquired about the plaintiff in a way that she found offensive and had never before experienced.
On May 8, 1989, Anderson saw Gerson Sternstein, M.D. (Sternstein), a psychiatrist, for counselling. The doctor diagnosed depression and prescribed medication. Thereafter, the plaintiff decided to undergo disk surgery and was operated on by John Calogero, M.D. (Calogero). Anderson testified that, following surgery, he experienced significant relief in his physical symptoms and that, upon returning to work on or about July 26, 1989, he was feeling emotionally well and had no plans for follow-up treatment with Sternstein.
Upon returning to work, another employee George Butmon (Butmon) suggested that the plaintiff ask for an orthopedic chair to be purchased for his use, as the state had provided other employees suffering from back problems with these chairs. The plaintiff then provided his supervisor, Vincent Bonaiuto (Bonaiuto) with a justification form for the purchase of such a chair (Plaintiff's Exhibit #2) and, later, with a letter from Calogero prescribing same. He did not then get the chair and Bonaiuto tore up the purchase requisition form in frustration, as he believed Anderson should have been given a chair.
Caye spoke with employee Frank D'Addabbo about getting an orthopedic chair for the plaintiff and she hand-delivered to him an authorization from Doctor Purcell dated August 17 1989. D'Addabbo testified that he did not CT Page 7380 recall these events. In his experience up to that time, he would not have refused such a request, regardless of whether or not the chair was needed as a result of a work-related injury. Likewise, Caye also testified that, in her experience, the state had provided orthopedic chairs and other appliances to employees regardless of whether the need arose from a work-related injury.
The plaintiff had been working on a project before his surgery and upon returning to work the project was behind schedule. He was unable to complete his work, in part, due to the fact that he was receiving treatment at work and because he was rising frequently to walk in accordance with Calogero's instructions. Anderson claimed that, at this point, he felt some problem with his supervisors and he told them that he was having a hard time getting his work done because he had to get up frequently and that, when he did, people would initiate conversations with him. His supervisors suggested to him that he was away from his desk too often, talking to other employees and thus not getting his work done. Bonaiuto and Santaniello experienced some bureaucratic frustration with the plaintiff's performance but they did not wish to discipline Anderson. Patricia Nadolny testified, when asked if Santaniello and Bonaiuto were treating the matter as a disciplinary problem, that "I think they were looking at the nonproductivity as — well, they were looking for advice as to how to handle it. I think they didn't know what was reasonable."
Bonaiuto did not downgrade plaintiff's performance evaluation for the period from March 1, 1989 through February 28, 1990 for any reason related to the plaintiff's workers' compensation claim and plaintiff's getting up and walking around frequently did not affect his evaluation. Anderson's quantity of work rating was downgraded from the prior year, from satisfactory to fair. The evaluation completed by Bonaiuto states: "Mr. Anderson is away from his desk on numerous occasions, sometimes for several minutes at a time. During these periods he has frequently been observed carrying on non-work related conversation with other personnel." This court cannot find that the evaluation of the plaintiff's work was downgraded as a result of his work-related injury.
The plaintiff claimed that he became increasingly CT Page 7381 anxious as a result of the combination of his supervisors' monitoring his activities, his failure to receive the orthopedic chair or be advised as to the status of his request, his employer's failure to timely process leave time and his supervisor's growing dissatisfaction with his work performance, though this resulted from his compensable injury. The court cannot find that. He also claimed that the situation became unbearable after receiving his evaluation on April 10, 1990. The court cannot find that. The court cannot find the evaluation was unfair, The court cannot find that in regard to the orthopedic chair, he was told by Bonaiuto that he did not deserve the chair because the neck injury was his own fault.
Sternstein found Anderson disabled from work beginning May 4, 1990 based on the history given by Anderson.
Prior to his scheduled return to work in August 1990, the plaintiff contacted Bonaiuto and inquired about the orthopedic chair and payment adjustments. Bonaiuto said he did not know anything about the chair and that he did not want to be in the middle of the plaintiff's problems. Because of this plaintiff decided not to return to that work setting. Sternstein did feel that the plaintiff had a work capacity. Anderson requested a transfer to a different department.
In early 1992, Anderson learned that there had been what he thought was significant personnel changes in his department and, then he returned to work in March 1992. Since that date, Anderson has received satisfactory job evaluations. His leave time adjustments were completed in October 1993.
No one had any explanation for the presence of the articles about fraudulent workers' compensation claims. Plaintiff was never discharged.
Law
Plaintiff's complaint is only under C.G.S. § 31-290a. That statute reads as follows, in pertinent part:
 Sec. 31-290a. Discharge or discrimination prohibited. Right ofCT Page 7382 action. (a) No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter.
 (b) Any employee who is so discharged or discriminated against may either: (1) Bring a civil action in the superior court for the judicial district where the employer has its principal office for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if he had not been discriminated against or discharged and any other damages caused by such discrimination or discharge. The court may also award punitive damages. Any employee who prevails in such a civil action shall be awarded reasonable attorney's fees and costs to be taxed by the court . . . .
For our purposes the important words in § 31-290a(a are "because" and "or otherwise exercised the right afforded to [sic] him pursuant to the provisions of this chapter." In reverse order we must decide what rights under the chapter plaintiff exercised. Then we must decide whether he was discriminated against "because" of such exercise.
From the record what he did in the exercise of his rights was the following: He took walks around the office. He went to the department nurse. He received heat treatments from the nurse. He filed workers compensation claims. He asked for an orthopedic chair several times. CT Page 7383
He sought processing of his "leave-time" He claimed disability from work for depression.
The present law in regard to the burden of proof under the applicable statute is set out in Ford v. Blue Cross Blue Shield of Connecticut, Inc., 216 Conn. 40, 53 -54, as follows:
 The plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, non-discriminatory reason for its actions. . . . `If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity.' . . . The plaintiff then must satisfy her burden of persuading the factfinder that she was the victim of discrimination `either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'
(Citations omitted)
This court cannot find that any of plaintiff's claimed injuries were proximately caused by any actions of defendant. Oakes v. New England Dairies, Inc., 219 Conn. 1,10.
The court cannot find that plaintiff has come close to proving "by a preponderance of the evidence a prima facie CT Page 7384 case of [unlawful] discrimination." "The plaintiffs must present some evidence from which a trier of fact could infer that the employer discriminated against the employees because they had exercised their rights under the Workers' Compensation Act. . . . Without some proof of an improper motive, the plaintiffs' case must fail." Chiaiav. Pepperidge Farm, Inc., 24 Conn. App. 362, 366.
The court finds that all of defendant's actions and reactions to plaintiff exercise of his rights were appropriate, reasonable and normal. The defendant's action were all legitimate and non-discriminatory. Although those actions were sometimes slow and "bureaucratic" they were not discriminatory. The plaintiff has not ever proven that any of defendant's actions were based on a discriminatory reason. The court believes and gives credence to defendant's evidence of its actions and reactions.
Judgment for defendant. N. O'Neill, J.