GREAT CENTRAL INSURANCE COMPANY, APPELLEE, *v.* TOBIAS, APPELLANT.

[Cite as Great Central Ins. Co. *v.* Tobias (1988), 37 Ohio St. 3d 127.]

(No. 87-912—Submitted February 16, 1988—Decided June 8, 1988.)

128

decisions in *Mason* v. *Roberts* (1973), 33 Ohio St. 2d 29, 62 O.O. 2d 346, 294 N.E. 2d 884, and *Settlemyer* v. *Wilmington Veterans Post No. 49* (1984), 11 Ohio St. 3d 123, 11 OBR 421, 464 N.E. 2d 521, not only as to the standard of care of the innkeeper in these types of cases, but also by extending liability to one who purchases liquor in a tavern for a fellow patron, we must reverse the decision of that court and reinstate the summary judgment issued by the trial court.

Initially, we are in agreement with the court of appeals' conclusion that no liability existed here by virtue of R.C. 4399.01, which provides:

"A husband, wife, child, parent, guardian, employer, or other person injured in person, property, or means of support by an intoxicated person, or in consequence of the intoxication, habitual or otherwise, of a person, after the issuance and during the existence of the order of the department of liquor control prohibiting the sale of intoxicating liquor as defined in section 4301.01 of the Revised Code to such person, has a *right of action* in his own name, severally or jointly, *against any person selling or giving intoxicating liquors* which cause such intoxication, in whole or in part, of such person." (Emphasis added.)

The strict liability imposed by this section is broad, and arguably would apply to one who purchases alcohol and gives it to an intoxicated person, provided the name of such person appears on the order, or "blacklist," issued by the Department of Liquor Control. As the decedent Wagner was not on such a blacklist, R.C. 4399.01 cannot apply.

Neither may the appellant-customer be held liable as a matter of common-law negligence. In *Mason* v. *Roberts, supra,* this court held, at paragraph two of the syllabus, that:

"The proprietor of a business

*Siemer & Boynton, Walter J. Siemer* and *Robert M. Greggo,* for appellee.

*Jerry Weiner* and *Andrea R. Yagoda,* for appellant.

HOLMES, J. The issue before us is whether the facts presented below were sufficient to state a cause of action under the existing law of this state. Because we find the court of appeals inappropriately expanded our

establishment wherein alcoholic beverages are dispensed for consumption upon the premises owes a duty to members of the public while they are in his place of business to exercise reasonable care to protect them from physical injury as a result of violent acts of third persons."

This duty arises from R.C. 4301.22, which provides, in pertinent part:

"Sales of beer and intoxicating liquor under all classes of permits and from state liquor stores are subject to the following restrictions, in addition to those imposed by the rules or orders of the department of liquor control:

"* * *

"(B) No sales shall be made to an intoxicated person."

In *Settlemyer* v. *Wilmington Veterans Post, supra,* we reaffirmed the law as pronounced in *Mason,* to the effect that R.C. 4399.01 did not provide the exclusive remedy against commercial providers of intoxicating beverages for injuries a patron suffered because of the sale of such beverages to another patron. However, we did not in that case discuss the advisability of extending the duty of the provider to the general public. Based upon the specific issue presented in the present case, we need not address the policy of broadening such common-law right of action here.

R.C. 4301.22(B) proscribes the sale of liquor to an intoxicated person. Such section could well apply to a commercial provider of alcohol where the "sale" is made to one patron with knowledge that the drink in fact was for another patron who was intoxicated. But that is not the issue before us. The facts here only involve knowledge of liquor sales by Rainbow Lanes to appellant, who was not intoxicated.[1] Also, the decedent obviously was not injured as a result of the violent acts of third persons; nor was he injured while in Rainbow Lanes. Under such circumstances, Rainbow Lanes breached no duty arising from R.C. 4301.22 or our decision in *Mason.* Moreover, appellant was not subject to R.C. 4301.22 since he was a social provider. R.C. 4301.22, unlike R.C. 4399.01, does not expressly extend liability to "any person * * * *giving* intoxicating liquors" to another. Specifically, *Settlemyer* stood only for the proposition that a social provider of liquor, such as appellant, cannot be liable to third persons subsequently injured by the intoxicated person. We today hold that the tavern keeper's duty, imposed by R.C. 4301.22(B), may not be enlarged and extended vicariously, through a "conduit" who, like appellant, purchases alcohol from the tavern keeper and gives it to a fellow patron.

"At common law it was the general rule that no tort cause of action lay against one who furnished, whether by sale or gift, intoxicating liquor to a person who thereby voluntarily became intoxicated and in consequence of his intoxication injured the person or property either of himself or

---

[1] Appellee argues that a commercial transaction, hence a "sale," occurred when appellant and the decedent entered into the wager and payment was made. This argument wholly misconstrues R.C. 4301.22(B) and the rationale of our *Mason* decision. As we pointed out in *Settlemyer, supra,* at fn. 1, the terms "sale" or "sell" are confined to their ordinary meaning in that statute, and we are unaware of any ordinary use of the word sale as a synonym for a wager of any kind. In addition, the scope of R.C. 4301.22 is limited by its terms to sales by state liquor stores and holders of permits issued by the Department of Liquor Control. Appellant is neither.

of another. The reason generally given for the rule was that the proximate cause of the intoxication was not the furnishing of the liquor, but the [voluntary] consumption of it by the purchaser or donee. The rule was based on the obvious fact that one could not become intoxicated by reason of liquor furnished him if he did not drink it." *Nolan* v. *Morelli* (1967),.154 Conn. 432, 436-437, 226 A. 2d 383, 386, quoted in *Slicer* v. *Quigley* (1980), 180 Conn. 252, 255-256, 429 A. 2d 855, 857.[2] See, also, *D'Amico* v. *Christie* (1987), 71 N.Y. 2d 76, 524 N.Y. Supp. 2d 1; *Mason, supra,* at 33, 62 O.O. 2d at 348, 294 N.E. 2d at 887; *Settlemyer, supra;* and *Guardianship of Newcomb* v. *Bowling Green* (1987), 36 Ohio App. 3d 235, 523 N.E. 2d 354. Where, as here, the injured party is the intoxicated person himself, it is the *voluntary drinking,* and not merely furnishing liquor, which is the proximate cause. Cf. *Vesely* v. *Sager* (1971), 5 Cal. 3d 153, 157, 95 Cal. Rptr. 623, 625, 486 P. 2d 151, 155. Accordingly, it was pointed out in *Mason* and in *Settlemyer* that the common law historically provided no remedial basis for third persons injured by intoxicated individuals for recovery from the provider of alcoholic beverages. It was also noted in *Mason* that courts in other jurisdictions have abandoned this legal principle in view of public policy requirements. We recognize the appropriateness of such a review of public policy in light of compiled statistics relating to vehicular accidents and injuries occasioned by the consumption of alcohol, see, *e.g., State, ex rel. Mothers Against Drunk Drivers,* v. *Gosser* (1985), 20 Ohio St. 3d 30, 20 OBR 279, 485 N.E. 2d 706, but conclude that any substantive amendments to our state's laws in this regard are more appropriately within the legislative arena than within the province of this court's review.

Our decision in *Mason* identified the only two exceptions to this common-law proximate cause rule: (1) "where the allegations, supported by the evidence, are such that, to the seller's knowledge, the purchaser's will to refrain is so impaired that it is not possible for him to refrain from drinking the liquor when it is placed before him," *id.* at 33, 62 O.O. 2d at 348, 294 N.E. 2d at 887, and (2) "[w]hen the sale is contrary to statute," *id.* As discussed above, neither of these exceptions is met here.

In spite of this absence of liability on the part of either the tavern[3] or the tavern patron herein, appellee argues, and the court of appeals held, that appellant could be liable on a concert of action theory as set forth within Section 876(b) of the Restatement of the Law 2d, Torts (1979) 315. Section 876 provides:

"For harm resulting to a third person from the *tortious conduct of another,* one is subject to liability if he

---

[2] We note with interest that the court in *Slicer,* over a strong dissent, upheld the common-law rule in face of a statute which proscribed the mere delivery or provision of intoxicating liquors to minors, Conn. G.S. 30-86, which is much like our own R.C. 4301.69 (prohibiting the mere furnishing liquor to a minor) and R.C. 4399.01, *supra* (prohibiting giving liquor to a "blacklisted" person). As noted above, the statute at issue here, R.C. 4301.22, prohibits only a sale to an intoxicated person, thus obviating the arguments of the dissenters in *Slicer.*

[3] Appellee does not concede any liability on the part of its insured, Rainbow Lanes, either in its release of claims to the Wagner widow or in its complaint below.

"'* * *

"(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself * * *." (Emphasis added.)

By its own terms, this principle has application only when the principal actor's behavior amounts to tortious conduct. Since we have determined that the tavern keeper here did not breach the duty of care owed to his patrons, the theory of joint liability for the encouragement of tortious conduct adopted by the court of appeals cannot apply to appellant under these circumstances.[4] Furthermore, even if Rainbow Lanes had engaged in tortious conduct, appellee failed to set forth any such cause of action in its complaint.

The trial court correctly determined that appellee stated no cognizable cause of action, and entered summary judgment in favor of appellant. The judgment of the court of appeals is reversed, and that of the trial court is reinstated.

*Judgment reversed.*

MOYER, C.J., SWEENEY, LOCHER and WRIGHT, JJ., concur.

DOUGLAS and H. BROWN, JJ., dissent.

DOUGLAS, J., dissenting. I believe that the appellee insurance company is entitled to contribution from appellant under these facts. Therefore, I dissent.

In my view, the law should impose liability on any person who, in a social *or* commercial setting, serves alcohol to a person he knows is intoxicated, where the intoxicated person thereafter injures himself or a third party through negligent operation of a motor vehicle. Obviously, this liability should be shared with the intoxicated person himself, who voluntarily consumed the alcohol, thereby putting himself and others at risk. But I believe that the law should not protect someone such as appellant from responsibility for first facilitating and encouraging a dangerous state of intoxication in another, and then abandoning the obviously intoxicated person to his own devices. For this reason, I would overrule this court's decision in *Settlemyer* v. *Wilmington Veterans Post No. 49* (1984), 11 Ohio St. 3d 123, 11 OBR 421, 464 N.E. 2d 521, upon which the majority relies.

Contrary to the conclusion of the *Settlemyer* court, imposition of liability on a social host is completely justifiable under conventional negligence principles. "Negligence" has been defined as "the failure to do what a person of ordinary prudence would do under the circumstances of a particular case. * * * It includes not only the omission to do something which a reasonably prudent man guided by those impulses which regulate the conduct of human affairs would ordinarily do, but includes also the doing of things which such a man under similar circumstances would not do. It is very clear, therefore, that the legal duty which the defendant owes to the plaintiff in any given case depends upon the surrounding facts and circumstances, and any legal controversy must leave to the jury a determination according to their own ideas of what a person of

---

[4] We are not faced with, nor do we decide herein, whether a cause of action exists against a tavern patron who encourages the tavern keeper to sell liquor to an intoxicated person.

ordinary prudence would have done under the circumstances." *Payne* v. *Vance* (1921), 103 Ohio St. 59, 67, 133 N.E. 85, 87.

Before failure to observe this standard may be made the basis for recovery, it must be shown that the plaintiff was within the class of persons to whom defendant owed a duty of care. *Gedeon* v. *East Ohio Gas Co.* (1934), 128 Ohio St. 335, 338, 190 N.E. 924, 926. "Only when the injured person comes within the circle of those to whom injury may reasonably be anticipated does the defendant owe him a duty of care." *Id.* See, also, *Menifee* v. *Ohio Welding Products, Inc.* (1984), 15 Ohio St. 3d 75, 77, 15 OBR 179, 180, 472 N.E. 2d 707, 710.

All the elements of actionable negligence are present in this case. Appellant provided the decedent, Wagner, with ten shots of whiskey and promised to pay him $100 if he drank them in rapid succession. Having encouraged Wagner to imbibe this excessive amount of alcohol by the promise of financial reward, appellant then apparently abandoned him or at least permitted him to leave the premises and drive away. As a direct result of his state of intoxication, Wagner drove his vehicle into a train and was killed.

It should be readily apparent that any reasonable person under these circumstances would realize that ten shots of whiskey, consumed over a very short period of time, would cause intoxication, probably extreme. It is also common knowledge that intoxicated persons operating motor vehicles pose a grave risk of serious harm to themselves and to others. Thus, decedent Wagner definitely may be classified as "within the circle of those to whom injury may reasonably be anticipated. * * *" *Gedeon, supra,* at 338, 190 N.E. at 926. Notwithstanding his awareness of Wagner's danger-

ous condition, it appears appellant took no steps to prevent Wagner from entering an automobile and driving away. Under the traditional concept of negligence outlined above, appellant can, and should, be held legally accountable for the resulting death.

This analysis is warranted not only from a strictly legal standpoint, but also by virtue of compelling public policy considerations. In recent years, society has registered increasing concern, even outrage, over the deplorable number of deaths and injuries caused by drunk drivers. It can hardly be disputed that many of these tragedies are the direct result of excessive consumption of alcohol in a social setting. The imposition of liability on irresponsible social providers of alcohol would, I believe, reduce the number of highway injuries and fatalities by encouraging providers to refuse to serve obviously intoxicated guests and to take reasonable steps to ensure the safe conduct of such persons. The inconvenience which the specter of liability will inflict on social hosts is minor when measured against the death and destruction caused by drunken drivers. *Kelly* v. *Gwinnell* (1984), 96 N.J. 538, 476 A. 2d 1219. The policy considerations advanced by imposing liability far outweigh these minor social inconveniences. *Id.* at 548, 476 A. 2d at 1229. We should show more concern for the misery caused by drunk driving and less for the comforts of those who facilitate the crime.

Though a theory of liability for social hosts has been and continues to be resisted by many jurisdictions, several courts in recent years have moved away from a blanket rule of non-liability, preferring an approach more protective of the victims of drunk driving. See, *e.g., Kelly, supra; McGuiggan* v. *New England Tel. & Tel. Co.* (1986), 398 Mass. 152, 496 N.E. 2d

141; *Sutter* v. *Hutchings* (1985), 254 Ga. 194, 327 S.E. 2d 716. Other courts have shown an inclination to hold that social hosts may be liable for automobile accidents caused by drunken guests. See, *e.g., Langle* v. *Kurkul* (1986), 146 Vt. 513, 510 A. 2d 1301; *Halligan* v. *Pupo* (1984), 37 Wash. App. 84, 678 P. 2d 1295. I believe that these decisions signal the beginning of a trend toward judicial recognition that society's interest in the sanctity of human life and limb overrides any asserted interest in unhindered social drinking.

I am not persuaded that courts should defer to the legislature in this area, as the majority insists. Common-law principles of negligence were judicially created, and it is clearly within the province of this court to determine the scope of duty in negligence cases. See *Menifee, supra;* Note, Common Law Negligence Theory of Social Host Liability for Serving Alcohol to Obviously Intoxicated Guests (1985), 26 B.C.L.Rev. 1249, 1275.

Under the foregoing analysis, appellee is clearly entitled to contribution pursuant to R.C. 2307.31(C) and 2307.32(C).[5] As a liability insurer of Rainbow Bowling Lanes, appellee became subrogated to Rainbow Lanes' right of contribution when it settled with Wagner's personal representative, thereby discharging Rainbow Lanes' liability for Wagner's death. As a joint contributor to that death, appellant is liable in contribution to appellee, since appellee's settlement agreement specifically extinguished appellant's liability for Wagner's death. See R.C. 2307.31(B).

Accordingly, I would affirm the judgment of the court of appeals, remanding this cause to the trial court for further proceedings.

H. BROWN, J., concurs in the foregoing dissenting opinion.

H. BROWN, J., dissenting. It has long been a fundamental principle of Ohio law that a person is liable for the foreseeable injuries caused by his failure to exercise reasonable care. *Cincinnati Riverfront Coliseum, Inc.* v. *McNulty Co.* (1986), 28 Ohio St. 3d 333, 28 OBR 400, 504 N.E. 2d 415; *Di Gildo* v. *Caponi* (1964), 18 Ohio St. 2d 125, 47 O.O. 2d 282, 247 N.E. 2d 732; *Gedeon* v. *East Ohio Gas Co.* (1934), 128 Ohio St. 335, 190 N.E. 924. This rule has most frequently been expressed as a "duty" of reasonable care owed to the plaintiff by the defendant. While the existence of this duty is largely a question of law, and dependent on a variety of factors, fore-

---

[5] R.C. 2307.31(C) provides:

"A liability insurer, which by payment has discharged in full or in part the liability of a tortfeasor and has thereby discharged in full its obligation as insurer is subrogated to the tortfeasor's right of contribution to the extent of the amount it has paid in excess of the tortfeasor's proportionate share of the common liability. This provision does not limit or impair any right of subrogation arising from any other relationship."

R.C. 2307.32(C) states:

"If there is no judgment for the injury or the wrongful death against the tortfeasor seeking contribution, his right of contribution is barred unless he has either discharged by payment the common liability within the statute of limitations period applicable to the claimant's right of action against him and has commenced his action for contribution within one year after payment, or agreed while action is pending against him to discharge the common liability and has within one year after the agreement paid the liability and commenced his action for contribution."

seeability of the risk is the primary consideration. *Menifee* v. *Ohio Welding Products, Inc.* (1984), 15 Ohio St. 3d 75, 15 OBR 179, 472 N.E. 2d 707; *Sams* v. *Englewood Ready-Mix Corp.* (1969), 22 Ohio App. 2d 168, 51 O.O. 2d 315, 259 N.E. 2d 507. A *reasonably foreseeable* risk of injury is created when an individual induces another to drink liquor, knowing that the amount of consumption will produce intoxication and that the intoxicated person will be operating a motor vehicle.

In the present case, the appellant offered one hundred dollars to a man if the man could drink ten shots of whiskey in rapid succession. The man did so, then got into his car and drove it into the side of a string of railroad cars at a railroad crossing.

Under these facts, it borders on the ludicrous to fit the appellant into the niche of "social provider" as the majority has done in order to reach its decision.

There is no need to fit this case within the framework of the liquor sales laws. To do so only leads to confusion. Under long-established principles of common law, liability should fall on one who knowingly induces the intoxication of another under conditions involving a reasonably foreseeable risk of harm. Other courts have recognized this position. See *Coulter* v. *Superior Ct. of San Mateo Cty.* (1978), 21 Cal. 3d 144, 145 Cal. Rptr. 534, 577 P. 2d 669; *Brockett* v. *Kitchen Boyd Motor Co.* (1968), 264 Cal. App. 2d 69, 70 Cal. Rptr. 136; *Coffman* v. *Kennedy* (1977), 74 Cal. App. 3d 28, 141 Cal. Rptr. 267; *Linn* v. *Rand* (1976), 140 N.J. Super. 212, 356 A. 2d 15; *Wiener* v. *Gamma Phi Chapter of Alpha Tau Omega Fraternity* (1971), 258 Ore. 632, 485 P. 2d 18; see, also, Annotation, Common-Law Right of Action for Damage Sustained by Plaintiff in Consequence of Sale or Gift of Intoxicating Liquor or Habit-Forming Drug to Another (1980), 97 A.L.R. 3d 528, 566-572.

Such an approach avoids the need to wrangle over the definition of "sale," the scope of duty owed by the proprietor of a commercial establishment, and the issues which are raised by interpretation of the Dram Shop Act.

I especially take issue with the majority when it acknowledges the statistics relating to vehicular accidents and injuries occasioned by the consumption of alcohol, but concludes that such is a concern for the legislature rather than the courts.

We are dealing here with principles of the common law of torts, the traditional domain of the courts. I see no reason to abdicate our responsibility under the guise of a let-the-legislature-do-it philosophy.

DOUGLAS, J., concurs in the foregoing dissenting opinion.