[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} Plaintiff, Alfred S. King, was incarcerated at Ross Correctional Institution ("RCI") in Chillicothe, Ohio from January 1996 to June 1999. In February 1999, plaintiff filed a complaint in the Ohio Court of Claims against RCI, alleging that prison officials of the Ohio Department of Rehabilitation and Correction were negligent in hiring, supervising, and disciplining Corrections Officers ("CO's") Debra Barnett and Robert Warth and Corrections Supervisor Lieutenant G. Simmons and in failing to protect appellant from a continuing course of abusive and demeaning treatment at the hands of CO's Barnett and Warth and Lt. Simmons. Plaintiff alleged that the abusive and demeaning treatment was in retaliation for plaintiff's filing of an informal complaint against CO Warth. Plaintiff further alleged that actions taken by CO's Barnett and Warth and Lt. Simmons were manifestly outside the scope of their employment and were undertaken with malicious purpose, in bad faith, and in a wanton or reckless manner. Plaintiff also alleged that CO's Warth and Barnett involved two other inmates in their actions.
 {¶ 2} Plaintiff filed a motion seeking a determination as to whether Lt. Simmons and CO's Barnett and Warth were entitled to personal immunity under R.C. 9.86 and 2743.02(F). After an evidentiary hearing on the matter, the trial court determined that plaintiff "failed to present any credible evidence by which to demonstrate that defendant's agents acted with malicious purpose, in bad faith, or in a wanton or reckless manner." (Sept. 21, 1999 Judgment Entry, page 2.) Accordingly, the court held that Lt. Simmons and CO's Barnett and Warth were entitled to personal immunity. Plaintiff's appeal of the trial court's immunity determination was sua sponte dismissed by this court due to plaintiff's failure to pay the required filing fee. King v. Ross Correctional Institution (Nov. 15, 1999), Franklin App. No. 99AP-1188.
 {¶ 3} The trial court bifurcated the action, and on June 6, 2001, the case was tried on the issue of liability. On February 5, 2002, the court rendered a judgment in favor of RCI. In particular, the court found that plaintiff's case was based upon an alleged conspiracy among CO's Barnett, Warth and various inmates to harass, humiliate and intimidate plaintiff and that the conspiracy ultimately led to an assault on plaintiff by inmate Gary Cantrell. The court further found that plaintiff could not prevail on his claim of civil conspiracy, which includes the element of malice, as the court had already determined at the immunity hearing that Lt. Simmons and CO's Barnett and Warth did not act with malice toward plaintiff.
 {¶ 4} Plaintiff has timely appealed the trial court's judgment and raises three assignments of error, as follows:
 {¶ 5} "[1.] The trial court erred and abused its discretion in characterizing the facts as a conspiracy and even if a conspiracy existed, denying presence of malice.
 {¶ 6} "[2.] The trial court erred and abused its discretion when it failed to rule on the claim the correctional officers harassed, intimidated and violated defendant-appellee-cross-appellant's regulations regarding treatment of inmates.
 {¶ 7} "[3.] The trial court's decision is against the weight of the evidence and is not supported by the evidence."
 {¶ 8} In addition, defendant has filed a cross-appeal, asserting the following as a "proposition of law" (which we will consider as defendant's cross-assignment of error):
 {¶ 9} "The evidence presented at trial failed to show Ross Correctional Institution had adequate notice of the impending assault."
 {¶ 10} At trial, plaintiff testified that at all times relevant to the instant matter, he was housed in dormitory 6B at RCI. The dormitories at RCI were sometimes referred to as "pods." On December 21, 1998, plaintiff filed an informal complaint with the mail room supervisor alleging that CO Warth allowed other inmates to go through the incoming mail and take out what they wanted. CO Warth was the second shift supervisor in dormitory 6B. Plaintiff testified that CO Warth came to his cell that evening and told him that any inmate who filed a complaint against him "better get out of the pod," and that he would "get at them." (Tr. 11.) The record contains an affidavit filed by plaintiff's cellmate, Elmore Jordan, corroborating plaintiff's testimony that CO Warth made the foregoing statement. On December 22, 1998, plaintiff filed a formal complaint against CO Warth regarding the mail-handling issue and the alleged threat.
 {¶ 11} According to plaintiff, on December 24, 1998, inmate Boyle overheard plaintiff talking to the unit correctional counselor about the informal complaint and reported plaintiff's actions to CO's Warth and Barnett. CO Barnett was the second shift officer in pod 6A, which was across from plaintiff's pod. Shortly thereafter, CO Barnett approached plaintiff screaming obscenities and chastising him for filing a complaint against CO Warth. She ordered plaintiff to follow her to the CO's lunch area in "C-section," where he was questioned by inmate Boyle and CO Warth. According to plaintiff, CO Barnett continued to berate him and reportedly told plaintiff that he "wasn't man enough to bring the complaint to them." (Tr. 13.) After plaintiff was permitted to leave "C-section," he told inmate Tillis about the incident. According to plaintiff, when CO Barnett observed him talking to inmate Tillis, she approached him and called him a "bitch-ass motherfucker" and a "snitch." (Tr. 14.)
 {¶ 12} Later that day, inmate Cantrell went to plaintiff's cell, told him that CO Barnett was "his [Cantrell's] girl" (Tr. 15), and asked him not to file a complaint against her. Inmate Cantrell left plaintiff's cell but returned shortly thereafer with CO Barnett. Plaintiff testified that CO Barnett apologized for her behavior and asked him not to file a complaint against her; in exchange, she would tell CO Warth not to file a disciplinary action against plaintiff. CO Barnett also told plaintiff that she did not normally discuss these types of matters with inmates. According to plaintiff, CO Barnett balled up her fist and told plaintiff that they (she and Cantrell) knew how to take care of people like plaintiff. Plaintiff agreed not to file a complaint against CO Barnett.
 {¶ 13} On December 25, 1998, CO Barnett came to plaintiff's cell with another inmate and told plaintiff that CO Warth would not be filing a disciplinary action against him. Plaintiff told CO Barnett that he did not want any trouble.
 {¶ 14} On December 26, 1998, plaintiff observed CO Warth and inmate Boyle tampering with the keyhole in his cell door. The next morning, CO Yates found the tip of a ballpoint pen jammed into the keyhole. Plaintiff told CO Yates that he was going to start complaining to prison administration about what had transpired between him and CO's Barnett and Warth. On December 27, 1998, plaintiff filed an informal complaint with the chief of security, alleging that CO Warth tampered with his cell keyhole in retaliation for plaintiff filing the informal complaint on December 21, 1998.
 {¶ 15} Plaintiff testified that on December 30, 1998, he spoke with the institutional inspector, Mr. McGinnis, about the threats allegedly made by CO's Barnett and Warth. According to plaintiff, Mr. McGinnis said he would look into the situation the next day. Approximately three hours later, inmate Cantrell assaulted plaintiff. Plaintiff reported the assault to Lt. Simmons. According to plaintiff, Lt. Simmons said he would investigate the matter. On January 3, 1999, Lt. Simmons questioned plaintiff and inmate Cantrell about the incident. Plaintiff testified that Lt. Simmons wanted plaintiff to agree to characterize the incident as a "fighting case" resulting from plaintiff's alleged sexual advancements toward inmate Cantrell. (Tr. 26.) Plaintiff surmised that Lt. Simmons concocted this story because he knew that plaintiff is bisexual. Plaintiff refused to agree to the "fighting" story. Lt. Simmons wrote a disciplinary ticket charging plaintiff with fighting. Although plaintiff was found guilty of the fighting infraction, the charge was ultimately expunged from his record on appeal.
 {¶ 16} On cross-examination, plaintiff admitted that he did not file a formal complaint against CO Barnett concerning her abusive behavior and/or threats; however, he verbally informed several staff members about the incidents. Plaintiff further testified that CO Warth was not on duty the day plaintiff was assaulted by inmate Cantrell.
 {¶ 17} Several persons who were incarcerated at RCI at the time of the events giving rise to plaintiff's complaint testified during plaintiff's case-in-chief. Those witnesses were Steven Garrett, Elmore Jordan, William Jacobs, Richard Mayes, and Robert Ashbrook.
 {¶ 18} Garrett testified that he witnessed CO Barnett "yelling and screaming" at plaintiff and observed CO Barnett "watching" when inmate Cantrell assaulted plaintiff. He further testified that CO Warth told him that plaintiff "better move out of here or I'm going to move him out of here." (Tr. 75.)
 {¶ 19} Jordan testified that he observed CO Barnett let an inmate from another cellblock (known to him only as "Bullwinkle") into plaintiff's cell. Shortly thereafter, Jordan heard plaintiff screaming and later saw that plaintiff had sustained personal injuries.
 {¶ 20} Jacobs attested that he observed CO Barnett and inmate Cantrell talking to plaintiff in his cell. Sometime later, plaintiff told him that he had been assaulted by inmate Cantrell. Jacobs admitted, however, that he did not witness the alleged assault.
 {¶ 21} Mayes attested that CO Barnett "did not like" appellant and often made derogatory comments to plaintiff about his sexual orientation. (Tr. 96.) Mayes further testified that he observed inmate Cantrell and CO Barnett in plaintiff's cell; however, he did not know what happened inside the cell. At some point thereafter, plaintiff came into Mayes's cell with a swollen lip and told him that inmate Cantrell assaulted him.
 {¶ 22} Ashbrook stated that he observed CO Barnett "cussing" at plaintiff and was aware that plaintiff had been assaulted by another inmate. He admitted, however, that he did not witness the assault. The record contains an affidavit signed by Ashbrook on December 30, 1998, stating that he observed CO Barnett and an inmate from a different housing location in plaintiff's cell.
 {¶ 23} David Baker, an investigator for RCI, was defendant's sole witness. Baker testified that plaintiff contacted him after the alleged assault and requested that he investigate the matter. During the course of his investigation, Baker interviewed plaintiff, who alleged that he had been assaulted by inmate Cantrell at the behest of CO Barnett. Baker also interviewed inmate Cantrell. As a result of that interview, Baker wrote an administrative ticket against inmate Cantrell for assault. He also referred the matter to an Ohio State Highway Patrol investigator for purposes of conducting a criminal investigation; however, no criminal charges were filed against inmate Cantrell. Baker further testified that he did not find any evidence to support plaintiff's allegation that the assault was orchestrated by CO Barnett; accordingly, no administrative action was taken against her.
 {¶ 24} By the first assignment of error, plaintiff contends that the trial court erred in characterizing his entire case as one based upon an alleged civil conspiracy among CO's Barnett and Warth and inmates Boyle and Cantrell to harass, humiliate, intimidate and assault plaintiff, and in finding that he could not prevail on such claim, which includes the element of malice, because the court had already determined at the immunity hearing that Lt. Simmons and CO's Barnett and Warth did not act with malice toward plaintiff. Plaintiff maintains that the facts as adduced at trial regarding the alleged assault established a cause of action for civil complicity under Restatement of the Law 2d, Torts (1979) 315, Section 876, which does not include the element of malice. More specifically, plaintiff claims that the evidence at trial clearly established that inmate Cantrell "aided and abetted" CO Barnett's wrongful actions, i.e., punishing plaintiff for filing the informal complaint against CO Warth and for threatening to file a complaint against her, by assaulting plaintiff.
 {¶ 25} We agree with plaintiff's contention that the trial court erred in finding that his entire case was based upon the theory of civil conspiracy. Plaintiff's complaint does not expressly set forth such a claim. As noted previously, the complaint alleges that defendant was negligent in hiring, supervising and disciplining the CO's and in failing to protect him from harassing, humiliating and intimidating treatment at the hands of the CO's. Although the complaint alleges that CO's Warth and Barnett involved two other inmates in their wrongful actions, we cannot find that this single allegation, standing alone, justifies the trial court's finding that plaintiff's entire cause of action was based upon the theory of civil conspiracy. Further, our review of the trial transcript does not convince us that such a theory was either expressly or implicitly argued by plaintiff.
 {¶ 26} Turning next to plaintiff's argument that the facts as adduced at trial regarding the alleged assault established a cause of action for civil complicity under Restatement of the Law 2d, Torts (1979) 315, Section 876, we first recognize that Ohio has adopted this section of the Restatement, see Great Central Ins. Co. v. Tobias (Apr. 9, 1987), Franklin App. No. 86AP-820, reversed on other grounds in Great Central Ins. Co. v. Tobias (1988), 37 Ohio St.3d 127; see, also, Duren v. Americare Columbus Nursing Center (June 28, 1990), Franklin App. No. 89AP-688. However, we find that neither the complaint nor the trial transcript expressly or implicitly set forth such a claim. Plaintiff cannot espouse a theory of liability for the first time on appeal and then argue that the evidence adduced at trial supported such a theory when the theory was never expressly or implicitly pled in the complaint or argued at trial. Accordingly, the first assignment of error is not well-taken.
 {¶ 27} By the second assignment of error, plaintiff argues that the trial court failed to rule on his claims that defendant was negligent in hiring, supervising and disciplining CO's Warth and Barnett and Lt. Simmons and in failing to protect him from their abusive and demeaning treatment, including the alleged assault. We agree. As noted previously, the trial court characterized plaintiff's entire cause of action as one for civil conspiracy and found, as a matter of law, that plaintiff could not prevail on such claim because he could not establish the element of malice. The court did not make any findings or even discuss plaintiff's negligence claims. As plaintiff's complaint clearly set forth claims of negligence against defendant, the trial court erred in failing to address those claims, and the case must be remanded for that purpose. Accordingly, the second assignment of error is well-taken.
 {¶ 28} By the third assignment of error, plaintiff contends that the trial court's decision is against the weight of the evidence and is unsupported by the evidence and, as such, judgment should have been rendered in favor of plaintiff. Given our finding that the case must be remanded for further proceedings before the trial court on plaintiff's negligence claims, plaintiff's third assignment of error is moot. App.R. 12(A)(1)(c).
 {¶ 29} Similarly, defendant's cross-assignment of error has been rendered moot by our decision to remand the case to the trial court for a determination on plaintiff's negligence claims. In its cross-assignment of error, defendant contends that the evidence presented at trial failed to establish negligence on the part of defendant. However, in light of our finding that the trial court failed to address those claims and that the case must be remanded for a determination thereon, it would be improper for this court to address the merits of defendant's cross-asssignment of error.
 {¶ 30} For the foregoing reasons, plaintiff's first assignment of error is overruled, his second assignment of error is sustained, his third assignment of error is moot, and defendant's cross-assignment of error is moot. Accordingly, the judgment of the Ohio Court of Claims is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded.
DESHLER and BROWN, JJ., concur.