[Cite as *Pierce v. Bishop*, 2011-Ohio-371.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

| | | |
|---|---|---|
| Rebecca L. Pierce, | : | Case No. 10CA6 |
| Plaintiff-Appellant, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| Marc W. Bishop, et al., | : | |
| | | **RELEASED 1/21/11** |
| Defendants-Appellees. | : | |

_____
APPEARANCES:

John J. Reagan, KISLING, NESTICO & REDICK, LLC, Akron, Ohio, for appellant.

John E. Triplett, Jr., and Daniel P. Corcoran, THEISEN BROCK, LPA, Marietta, Ohio, for appellees.
_____
Harsha, P.J.

{¶1}  In this wrongful death action, Rebecca Pierce, Administratrix of the Estate of Bret Pierce, appeals the decision granting summary judgment in favor of Athens Towing and Recovery Ltd.  After Athens Towing removed a vehicle that was illegally parked, Tommy Bishop and others went to the impound lot to retrieve the vehicle. Athens Towing released the vehicle to Bishop, who was allegedly visibly intoxicated. Bishop later crashed the vehicle and Bret Pierce, who was a passenger, died in the accident.

{¶2}  Rebecca Pierce claims that genuine issues of material fact exist concerning whether Athens Towing is liable for the death of Bret Pierce.  She contends that Athens Towing voluntarily assumed a duty to protect Bret Pierce.  She cites the company policy manual, as well as Athens Towing's past actions of "stalling" or reporting intoxicated individuals reclaiming vehicles from their impound lot, as evidence

of the assumption of that duty. However, there is no evidence that Athens Towing undertook to perform a duty of care owed by Bishop to Bret Pierce, acted in a manner that increased the risk of harm that Bret Pierce voluntarily subjected himself to, or that Bret Pierce or Tommy Bishop were aware of or relied upon Athens Towing's safety manual or company practices. Accordingly, we conclude Athens Towing did not assume a duty to Bret Pierce and affirm the judgment of the trial court.

## I.  Summary of the Facts

{¶3}   Bishop drove Bret Pierce, Joe Kisor, Heath Cook, and Marc Bishop (Tommy's father), to Athens, Ohio, where the group planned to attend the annual Halloween block party. Prior to leaving, the group smoked marihuana. Bishop was driving his father's vehicle despite the fact that Bishop did not have a license.

{¶4}   On the way, the group stopped at a convenience store and purchased a thirty-pack of beer. After they arrived in Athens, Bishop illegally parked the vehicle in a private parking lot. Then the group took some beer and joined the block party. Later, Heath Cook returned to the car to obtain more beer and saw that it was in the process of being towed.  John Melville, the owner of Athens Towing, allowed Cook to retrieve the beer from the car but then towed the car to the company impound lot.

{¶5}   Cook indicated that when the Bishops learned the car had been towed they were yelling at each other for not seeing the "no parking" sign. Cook said it was clear from this argument that Bishop was drunk because of the way he was slurring his speech and his bloodshot eyes. Cook estimated that Bishop drank at least six beers while in Athens. Soon after the argument, everyone except for Cook took a cab to the impound lot.

**{¶6}**   Once there, Bishop went inside the office while the rest of the group stayed outside.  Bishop produced "some kind of I.D." other than a driver's license to Melville's wife, Deborah, who presented him with the bill for the tow.  After obtaining payment, Mrs. Melville opened up the gate to the impound lot and let Bishop retrieve the vehicle.  She watched as he pulled the car out of the lot, the group entered the vehicle, and they drove away.  Mrs. Melville claimed that Bishop did not appear or otherwise indicate to her that he was intoxicated.

**{¶7}**   Once back in the vehicle Tommy and Marc Bishop continued arguing.  Marc wanted to return to Athens while Tommy wanted to go home.  Joe Kisor reiterated that it was obvious that both Bishops were drunk.  Nonetheless, Tommy Bishop drove the group towards home, sometimes traveling in excess of 90 miles per hour.  On the way home, Bishop wrecked the car by striking a parked pick-up truck.  The crash resulted in Bret Pierce's death.

**{¶8}**   Rebecca Pierce, in her capacity as Administratrix of Bret Pierce's Estate, filed a wrongful death action, naming Athens Towing, among others, as a defendant.  The complaint sought damages against Athens Towing on claims of general negligence and negligent hiring, supervision, and retention.  After discovery, Athens Towing moved for summary judgment.  The court issued a two-page judgment entry granting summary judgment in favor of Athens Towing on both of Pierce's claims.  The court did not explain its rationale, but merely stated that there were no genuine issues of fact and Athens Towing was entitled to summary judgment.

## II.  Assignments of Error

**{¶9}**   Rebecca Pierce filed this appeal and assigns a single error for our review:

THE TRIAL COURT INCORRECTLY GRANTED SUMMARY JUDGMENT CONCLUDING THAT NO GENUINE ISSUES OF MATERIAL FACT EXIST REGARDING WHETHER DEFENDANT, ATHENS TOWING & RECOVERY, LTD., CAN BE HELD LIABLE FOR THE WRONGFUL DEATH OF BRET PIERCE AFTER RELEASING AN IMPOUNDED VEHICLE TO AN [sic] VISIBLY INTOXICATED, UNLICENSED DRIVER WHO WAS NOT THE OWNER, WHERE EXPERT TESTIMONY WAS PRESENTED ESTABLISHING THAT RELEASING THE VEHICLE UNDER SUCH CIRCUMSTANCES BREACHED THE STANDARD OF CARE IN THE TOWING INDUSTRY.

### III.  Standard of Review for Summary Judgment

{¶10}  In reviewing a summary judgment, the lower court and the appellate court utilize the same standard, i.e., we review the judgment independently and without deference to the trial court's determination.  *Doe v. Shaffer*, 90 Ohio St.3d 388, 390, 2000-Ohio-186, 738 N.E.2d 1243. A summary judgment is appropriate only when (1) there is no genuine issue of material fact, (2) reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party, and (3) the moving party is entitled to judgment as a matter of law. Id. See, also, *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881; Civ.R. 56(C). The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting summary judgment. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. If the moving party satisfies this burden, the nonmoving party then has the reciprocal burden outlined in Civ.R. 56(E), to set forth specific facts showing that there is a genuine issue for trial. If the nonmovant does not satisfy this evidentiary burden and the movant is entitled to judgment as a matter of law, the court should enter a summary judgment accordingly. *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 145, 1997-Ohio-219, 677 N.E.2d 308

(criticized on other grounds by *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526).

### IV.  Negligence -- Generally

{¶11}  "[N]egligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm." 2 Restatement of the Law 2d, Torts (1965), Section 282.  Negligence occurs when the defendant fails to recognize that he owes a duty to protect the plaintiff from harm and that failure proximately resulted in injury or damage to the plaintiff.  *Di Gildo v. Caponi* (1969), 18 Ohio St.2d 125, 127, 247 N.E.2d 732; *Kauffman v. First-Central Trust Co.* (1949), 151 Ohio St. 298, 306, 85 N.E.2d 796.  The elements of a claim of negligence are: (1) the existence of a legal duty owing from the defendant to the plaintiff; (2) the defendant's breach of that duty; and (3) injury to the plaintiff proximately resulting from such failure. *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, at ¶22, citing *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265.  To recover, a plaintiff must also prove damages proximately resulting from the breach.  *Horsley v. Essman*, 145 Ohio App.3d 438, 442, 2001-Ohio-2557, 763 N.E.2d 245, citing *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614.

{¶12}  The existence and conditions of a duty between two parties is determined by the nature of the relationship between them.  *Wallace* at ¶23, citing *Commerce & Industry Ins. Co. v. Toledo* (1989), 45 Ohio St.3d 96, 98, 543 N.E.2d 1188.  The duty element of negligence poses a question of law for the court to determine. Id. at ¶22. "[T]he existence of a duty depends upon the foreseeability of harm: if a reasonably prudent person would have anticipated that an injury was likely to result from a

particular act, the court could find that the duty element of negligence is satisfied." Id. at

¶23, citing *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677,

680, 1998-Ohio-602, 693 N.E.2d 271; *Commerce,* supra; *Menifee v. Ohio Welding*

*Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 472 N.E.2d 707. Duty has also been

described as "the court's 'expression of the sum total of those considerations of policy

which lead the law to say that the particular plaintiff is entitled to protection.'" *Wallace* at

¶24, quoting *Mussivand*, supra, in turn quoting Prosser, Law of Torts (4th ed.1971),

325-326. Thus, there is no explicit formula for determining whether a duty exists and

the existence of a duty is largely dependent upon the facts and circumstances present.

See *Payne v. Vance* (1921), 103 Ohio St. 59, 67, 133 N.E. 85.

{¶13} Courts may find evidence of a duty in: (1) the common law, *Chambers v.*

*St. Mary's School*, 82 Ohio St.3d 563, 565, 1998-Ohio-184, 697 N.E.2d 198; (2)

legislative enactment, Id.; (3) express or implied provisions of a contract, *Larson v.*

*Cleveland Ry. Co.* (1943), 142 Ohio St. 20, 50 N.E.2d 163; and (4) the relationship of

the parties, *Drew v. Gross* (1925), 112 Ohio St. 485, 147 N.E. 757.

V.  Is Athens Towing Subject to Liability?

{¶14} Rebecca Pierce claims Athens Towing owed Bret Pierce a duty of care

because of their written company safety policy and their past actions of "stalling" or

reporting intoxicated drivers who retrieved vehicles from their impound lot. Second, she

argues that genuine issues of fact exist concerning whether Athens Towing breached

that duty. Here, she points to the affidavit of her towing industry expert who opined that

Athens Towing breached an industry standard of care by allowing a visibly intoxicated

driver to retrieve and drive away in a vehicle. Third, she argues that genuine issues of

fact exist regarding whether Athens Towing's breach proximately resulted in Bret Pierce's death. She admits that Tommy Bishop's intoxicated driving was a cause of Bret Pierce's death. However, she argues that Athens Towing's action of releasing the vehicle to Bishop was also a proximate cause.

### A. Did Athens Towing Owe a Legal Duty to Bret Pierce?

**{¶15}** Our research revealed no common law, case law, or statutory authority in Ohio recognizing a duty owed by a bailee towing company to a third party who is injured by the driver of a car retrieved from the towing company. Nor does Pierce cite any authority that could arguably support the existence of such a duty. And in fact, our review of foreign state law revealed that most courts addressing similar situations have rejected the existence of a duty under similar facts. See *Mills v. Continental Parking Corp.* (Nev. 1970), 86 Nev. 724, 475 P.2d 673 (parking lot operator surrendered car to intoxicated car owner); *Knighten v. Sam's Parking Valet* (Cal. App. 1988), 206 Cal. App. 3d 69 (restaurant and valet service returned vehicle to obviously intoxicated driver); *Horne v. Vic Potamkin Chevrolet, Inc.* (Fla. 1988), 533 So.2d 261 (automobile dealer sold car to driver he knew to be incompetent to drive); *Sampson v. W.F. Enters., Inc.* (Mo. App. 1980), 611 S.W.2d 333 (defendant returned keys to intoxicated driver). But, see, *Bourgeois v. Vanderbilt* (W.D. Ark. 2009), 639 F.Supp.2d 958 (court implied valet service could be held liable if it knew of driver's intoxication). Thus, Pierce's sole argument for imposing a duty upon Athens Towing is based upon its voluntary assumption of that obligation.

### B. Voluntary Assumption of Duty – The Good Samaritan Doctrine

**{¶16}** Pierce's sole argument concerning the existence of a duty focuses on Athens Towing's written policy manual, which specifies that safety is a priority of the company. Specifically, Pierce cites to a portion of the Athens Towing Policy Manual, authored by John Melville, which provides:

## STATEMENT OF SAFETY POLICY

It is the policy of the company to strive for the highest safety standards in our operations. Safety does not occur by chance. It is the result of careful attention to all company operations by those who are directly and indirectly involved.

Accidents occur because of either unsafe acts of people or unsafe conditions in the area. The objective is to eliminate and/or control these two basic accident causes. Regard for the safety of the general public and our own employees is a top priority, therefore it is of utmost importance that all aspects of our safety procedures are followed.

## GENERAL SAFETY RULES

Use care and good judgment and experience to avoid accidents whether or not a rule is contained in this manual.

**{¶17}** Pierce also notes that in their deposition testimony, both John and Deborah Melville acknowledged that these safety policies were intended to benefit the general public as well as customers of Athens Towing. The Melvilles also conceded that they were aware of the dangers of drunk driving and both believed that it would be an unsafe practice to release a vehicle to an intoxicated person. Pierce points out that the Melvilles' deposition testimony revealed that Athens Towing had on previous occasions "stalled" individuals who they believed were intoxicated from obtaining their vehicle from impound. On other occasions, they allowed allegedly intoxicated persons to obtain their vehicle but subsequently contacted law enforcement to report the vehicle's make, model, license plate, and direction of travel.

**{¶18}**  Thus, the substance of Pierce's argument is that by adopting the policy manual and performing these prior acts, Athens Towing voluntarily "assumed" a duty to protect Bret Pierce from the tortious conduct of an individual who reclaimed a vehicle from Athens Towing.

**{¶19}**   The "voluntary duty" rule stated in Restatement of the Law 2d, Torts (1965), Section 324 A applies to our facts.  See comment *a*, which explains that Section 323 deals with liability of the actor to the person whom the actor has agreed to provide services, while Section 324 A deals with the actor's liability to third persons.  See, also, *Wissel v. Ohio High School Athletic Assoc.* (1992), 78 Ohio App.3d 529, 541-542 and fn. 3, 605 N.E.2d 458.

**{¶20}**  Under the Good Samaritan Doctrine, one who voluntarily agrees to act where the law imposes no obligation to do so becomes subject to the duty to act carefully.  Restatement Section 324 A explains that duty and provides:

§ 324 A.  Liability to Third Person for Negligent
Performance of Undertaking

One who undertakes, gratuitously or for consideration, to render services
to another which he should recognize as necessary for the protection of a
third person or his things, is subject to liability to the third person for
physical harm resulting from his failure to exercise reasonable care to
protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm,
or

(b) he has undertaken to perform a duty owed by the other to the third
person, or

(c) the harm is suffered because of reliance of the other or the third person
upon the undertaking.

**{¶21}** Initially, we do not believe the services rendered to the driver, Tommy Bishop, were necessary for the protection of a third person. Here, Athens Towing, as a bailee, complied with its common law duty to return the car upon payment of the towing charges. See *David v. Lose* (1966), 7 Ohio St.2d 97, 98-99, 218 N.E.2d 442. The rendering of this service was not associated with any duty Bishop had to protect Bret Pierce. Thus, Section 324 A would not seem to be applicable.

**{¶22}** Nonetheless, we look next at subsection (b), i.e., to see if the policy manual of Athens Towing and the deposition testimony of the Melvilles are indicative of a decision to assume the responsibility that the driver, Tommy Bishop, owed to his passenger, Bret Pierce. We conclude that they are not. The policy and testimony reflect a general concern for the safety of the company's employees, its customers and the general public. However, they are too general and aspirational in nature to be read as an affirmative assumption of a car owner's/driver's duty of reasonable care to the passengers. See, *Muniz v. National Can Corp.* (C.A.1 1984), 737 F.2d 145, at 148-149, interpreting Section 324 A and holding a general concern for safety does not indicate a conscious undertaking of a duty to a third party. As our colleagues in the Second District have noted, imposition of a duty on the basis of aspirational policies like this one would discourage worthy but nonmandatory efforts to promote safety and amount to adopting a "rule that makes law out of the clich[é], 'No good deed goes unpunished.'" *Community Ins. Co. v. McDonald's Restaurants of Ohio, Inc.* (Dec. 11, 1998), Montgomery App. Nos. 17051, 17053, 1998 WL 852772, at *5-6

(applying the Good Samaritan rule in the context of Restatement Section 323).

We agree with their conclusion that it is not good policy to do so, as it would also

result in almost unlimited potential liability.

{¶23} Nor can we conclude under Section 324 A(a), that by returning the

car to its driver, Athens Towing increased the risk of harm to Bret Pierce. An

increase in the risk of harm only occurs when a defendant's negligent conduct

somehow puts the plaintiff in a worse situation than if the defendant had never

acted. *Powers v. Boles* (1996), 110 Ohio App.3d 29, 35, 673 N.E.2d 617

(applying Section 323). Here, Pierce had already assumed the risk of riding to

and from Athens with a driver he knew to have been impaired by alcohol and

marihuana. Clearly, the risk that such a driver might wreck the car was apparent

to any reasonable person. Athens Towing's act of releasing the car to Bishop did

not increase that risk, for it did nothing to encourage the alcohol and drug abuse,

or reckless driving.

{¶24} Finally, there is no evidence in the record that Tommy Bishop or

Bret Pierce relied in any manner on Athens Towing's safety policies or past

actions for purposes of Section 324 A(c). In fact, there is no evidence either was

aware of them.

{¶25} Thus, we conclude that Athens Towing did not assume a duty to

Bret Pierce under Restatement (Second) of Torts § 324(A) or any other provision

of the law.

C. Restatement Section 876(b).

{¶26} Although neither party cites to it, our research revealed that Section 876(b) of the Restatement of the Law 2d, Torts (1979) 315, could arguably provide a basis for Athens Towing's liability. This section has been cited, although not expressly adopted, by the Supreme Court of Ohio. *Great Cent. Ins. Co. v. Tobias* (1988), 37 Ohio St.3d 127, 130-131, 524 N.E.2d 168; *Allstate Fire Ins. Co. v. Singler* (1968), 14 Ohio St.2d 27, 30, 236 N.E.2d 79. Although one does not have a duty to prevent tortious or criminal acts of a third party absent a special relationship, Section 876(b) establishes liability when a plaintiff can demonstrate that the defendant did not merely fail to act, but also assisted the third party in committing the tort or criminal act. It provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he * * * (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself * * *.

{¶27} Pierce's complaint alleged that Bishop appeared visibly intoxicated while in Deborah Melville's presence and that Athens Towing knew or should have known that Bishop would operate the impounded vehicle in an intoxicated state. Pierce further alleged that Athens Towing was negligent for allowing Bishop to obtain the vehicle despite his intoxication and failure to produce a valid driver's license. Thus, we believe that the complaint contains allegations sufficient to plead a cause of action under this section.

{¶28} The first element of a claim predicated on Section 876(b) is knowledge by the principal (Athens Towing) that the "other's" (Tommy Bishop's) conduct constitutes a breach of duty. Because we construe all facts in the summary judgment record in the non-movant's favor, we assume that Deborah Melville was aware of Tommy Bishop's intoxication, reasonably should have known that he might be operating the impounded

vehicle on the roadways, and thus was aware that his conduct constituted a breach of duty. The question then becomes whether Deborah Melville "encouraged" or gave "substantial assistance" to Tommy Bishop's fateful decision to drink and operate his vehicle recklessly.

{¶29} Although Section 876(b) has been applied on several occasions by courts in Ohio, our research revealed no cases directly on point or discussing in detail what sort of action amounts to "encouragement" or "substantial support." The comment to subsection (b) explains: "[i]f the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it himself is a tortfeasor and is responsible for the consequences of the other's act. * * * The assistance of or participation by the defendant may be so slight that he is not liable for the act of the other. In determining this, the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind are all considered."

{¶30} The only evidence of an act of assistance or encouragement by Athens Towing is the fact that Deborah Melville allowed Bishop to retrieve the car from the impound lot. Thus, the question becomes whether releasing a car under these circumstances can be characterized as "substantial" enough or alternatively too "slight," to implicate liability under Section 876(b). Although this inquiry involves factual issues, the determination of whether 876(b) imposes a duty ultimately remains a question of law. See, e.g., *Ornelas v. United States* (1996), 517 U.S. 690, 696-697, 116 S.Ct. 1657 (holding that a determination of reasonable suspicion or probable cause is a question of

law despite the need to consider historical facts); See, also, *Wallace*, supra, at ¶22 (existence of a duty in negligence is a question of law).

**{¶31}** For help in answering this question we look by way of analogy to a similar foreign case.  In *Simmons v. Homatas* (Ill. 2010), 236 Ill.2d 459, 925 N.E.2d 1089, the Illinois Supreme Court held that a strip club operator could be liable under Section 876(b) for substantially assisting a drunk driver who left the strip club premises. Id. at 478-479.  Homatas and a companion visited a strip club that did not have a liquor license but allowed patrons to bring their own alcohol. Id. at 462.  The strip club encouraged patrons to bring their own alcohol by selling glasses, ice, soft drinks, and "mixers."  When Homatas arrived, he used the club's valet service, which was required.  Homatas and his companion then entered the club with two fifths of liquor. Id.

**{¶32}** Two hours later, Homatas was visibly intoxicated and was found vomiting in the restroom by a club employee.  The employees immediately ejected Homatas and his companion from the club, calling the valet service to start his car and bring it to the front door.  When the car arrived, club employees opened the driver side door and directed Homatas to leave the premises. Fifteen minutes later, Homatas collided with a vehicle, resulting in the death of Homatas' companion and several other deaths. Id.

**{¶33}** The Illinois court held that "[a] reasonable jury could * * * conclude that ejecting Homatas from the club, having the parking valet bring Homastas' car to the front of the club, and assisting him into his vehicle and directing him to drive off constitutes substantial assistance from, or encouragement by, [the club] toward Homatas in his tortious conduct." Id. at 479.

**{¶34}** Here, Athens Towing's actions did not rise to such an egregious level, and we believe that no reasonable jury could find that their actions amounted to "substantial assistance." The only affirmative acts taken by Athens Towing that arguably assisted Bishop in his tortious conduct was releasing the impounded car to him. Athens Towing did not facilitate in any manner Bishop's insobriety or drug abuse. It did not sell or provide him with the alcohol or marihuana he voluntarily consumed or encourage him to consume it, as was the case in *Homatas*. Finally, Athens Towing took no part in Bret Pierce's decision to take the risk of riding to and from Athens with a driver Pierce knew was impaired.

## VI. Conclusion

**{¶35}** Consequently, we hold that liability cannot be imposed on Athens Towing for its voluntary assumption of general safety policies and pasts actions or for in-concert liability under Restatement Section 876(b). And because in the absence of duty there can be no actionable negligence, we do not address Pierce's arguments concerning breach and causation. We reject Pierce's sole assignment of error and affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

Kline, J., concurring.

{¶36} I concur in judgment and opinion except for the opinion's discussion of Restatement Section 876(b). In my view, Pierce did not raise arguments related to Restatement Section 876(b) in her opposition to Athens Towing's motion for summary judgment. Therefore, I would not address these issues on appeal. See *Litva v. Richmond*, 172 Ohio App.3d 349, 2007-Ohio-3499, at ¶18 (holding that "an appellate court must limit its review of a summary judgment to that which was on record before the trial court").

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, J.:  Concurs in Judgment and Opinion.
Kline, J.:  Concurs in Judgment and Opinion with Concurring Opinion.


For the Court


BY:  _____
William H. Harsha, Presiding Judge




## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**